| | |
|---|---|
| 1 | JOHN P. LeCRONE (State Bar No. 115875) |
|   | johnlecrone@dwt.com |
| 2 | JONATHAN L. SEGAL (State Bar No. 264238) |
|   | jonathansegal@dwt.com |
| 3 | EVELYN F. WANG (State Bar No. 273622) |
|   | evelynwang@dwt.com |
| 4 | DAVIS WRIGHT TREMAINE LLP |
|   | 865 South Figueroa Street, 24th Floor |
| 5 | Los Angeles, California 90017-2566 |
|   | Telephone: (213) 633-6800 |
| 6 | Fax: (213) 633-6899 |
| 7 | Attorneys for Defendants |
| 8 | REDFLEX TRAFFIC SYSTEMS, INC., and REDFLEX TRAFFIC SYSTEMS (CALIFORNIA), INC. |

FILED
2014 MAY 32 PM 2:36
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY _____

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AARON M. ROSENBERG, an individual,

                Plaintiff,

vs.

REDFLEX TRAFFIC SYSTEMS, INC., an Arizona corporation; REDFLEX TRAFFIC SYSTEMS (CALIFORNIA), INC., a California corporation; REDFLEX TRAFFIC SYSTEMS, INC., a Delaware corporation; REDFLEX HOLDINGS LIMITED, an Australian form of entity unknown; and DOES 1 through 25, inclusive,

Case No. **CV14-3420 GW RZx**

**DECLARATION OF ROBERT DEVINCENZI IN SUPPORT OF DEFENDANT REDFLEX TRAFFIC SYSTEMS, INC.'S NOTICE OF REMOVAL**

# DECLARATION OF ROBERT DEVINCENZI

I, Robert DeVincenzi, declare and state as follows:

1. I am currently a non-executive member of the Board of Directors for Redflex Traffic Systems, Inc. (hereafter "Redflex DE"). In my role a Board Member for Redflex DE, I have first-hand knowledge and familiarity with the employees, officers, and corporate structure of Redflex DE. I have first-hand knowledge, or have confirmed through review of relevant business records, the facts contained in this declaration. I am over the age of eighteen, and, if called upon to testify, I could and would competently testify thereto. I offer this declaration in support of defendant Redflex DE's Notice of Removal in *Aaron M. Rosenberg v. Redflex Traffic Systems, Inc. et al.*, Case No. BC536891, filed in the Superior Court of the State of California for the County of Los Angeles.

2. Redflex DE is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 23751 N 23rd Avenue, Suite 150, Phoenix Arizona. Redflex DE's high-level officers direct, control and coordinate its operations primarily from the company's offices in Phoenix, Arizona.

3. I have reviewed the complaint filed by Plaintiff Aaron Rosenberg in the above-captioned action. In the complaint, Mr. Rosenberg alleges the existence of a corporation organized and existing under the laws of the State of Arizona named "Redflex Traffic Systems, Inc." Based on my knowledge and understanding of Redflex DE's corporate structure and on my review of business records, there is no related entity named "Redflex Traffic Systems, Inc." organized and existing under the laws of the State of Arizona.

4. In the complaint, Mr. Rosenberg also alleges that he entered into an employment agreement with "Redflex", which is defined to refer collectively to four different entities: Redflex Traffic Systems, Inc., an Arizona Corporation; Redflex Traffic Systems (California), Inc.; Redflex DE; and Redflex Holdings Limited.

1  Based on my review of corporate records, I am informed and believe that Mr.
2  Rosenberg was solely employed by Redflex DE and was never an employee of
3  Redflex Traffic Systems (California), Inc. (hereafter "Redflex CA") or Redflex
4  Holdings Limited. As explained above, I am informed and believe that the entity
5  alleged as "Redflex Traffic Systems, Inc., an Arizona Corporation" does not exist.

6      5.    Based on my review of business records, I am informed and believe that
7  Redflex CA does not, and at all relevant times to this action did not, employ Aaron
8  Rosenberg. Based upon my knowledge that Redflex CA did not employ Aaron
9  Rosenberg, Redflex CA did not have the authority to, and did not, exercise control
10 over Mr. Rosenberg's hours of work, type of work, place of work or working
11 conditions. Redflex CA did not have the power to, and did not, supervise
12 Mr. Rosenberg. Furthermore, Redflex CA did not have the authority to, and did not,
13 negotiate or set Mr. Rosenberg's salary or make any decisions affecting the terms
14 and conditions of Mr. Rosenberg's employment. Redflex CA did not have the
15 authority to, and did not, discipline Mr. Rosenberg or make the decision to separate
16 Mr. Rosenberg from employment.

17     6.    On or about March 4, 2002, Redflex DE hired Aaron Rosenberg to serve
18 as Vice President of Sales for North America. From 2002 to 2011, Redflex DE made
19 the decision to promote Mr. Rosenberg to various positions within Redflex DE.

20     7.    On or about September 13, 2011, Redflex DE promoted Aaron
21 Rosenberg to the position of Executive Vice President of Sales and Business
22 Development for Redflex DE. In his position as Executive Vice President of Sales
23 and Business, Mr. Rosenberg reported to Karen Finley, the former Chief Executive
24 Officer of Redflex DE. Attached as **Exhibit A** is a true and correct copy of the
25 employment agreement signed by Mr. Rosenberg on or about September 13, 2011.
26 The employment agreement sets forth the terms and conditions of Mr. Rosenberg's
27 employment as Executive Vice President of Sales and Business for Redflex DE.
28

8. Redflex DE had the authority to, and did, exercise control over Mr. Rosenberg's hours of work, type of work, place of work and working conditions. While Redflex DE permitted Mr. Rosenberg to work, in part, from California, where he maintains his residence, Mr. Rosenberg at all times reported to supervisors at Redflex DE. Furthermore, Redflex DE had the power to, and did, set Mr. Rosenberg's salary. Redflex DE paid Mr. Rosenberg's wages and maintained his employment and payroll records.

9. Redflex DE had the authority to, and did, make the decision to separate Mr. Rosenberg from employment on or about February 20, 2013. The Board of Directors for Redflex DE made the decision to separate Mr. Rosenberg from employment following an internal investigation that determined that Mr. Rosenberg had committed dishonest and unethical acts in violation of Mr. Rosenberg's agreements with, and obligations to, Redflex DE.

10. Specifically, in or around October 2012, as a result of inquiries from a reporter with the Chicago Tribune concerning allegations of misconduct by Redflex DE's employees and representatives, Redflex DE hired the law firm of Sidley Austin LLP to conduct an internal investigation. I am informed and believe that Redflex CA played no part in directing, and was not otherwise involved in, the internal investigation. Rather, the internal investigation focused solely on Redflex DE and its employees.

11. As part of the internal investigation, attorneys from Sidley Austin LLP interviewed numerous employees of Redflex DE, including Mr. Rosenberg. The investigation revealed that Mr. Rosenberg had engaged in a pattern of intentional and wrongful conduct in direct violation of his employment agreements with Redflex DE, including the most recent employment agreement signed by Mr. Rosenberg on September 13, 2011 and attached hereto as **Exhibit A**. After the conclusion of the internal investigation, Redflex DE terminated Mr. Rosenberg's employment on or about February 20, 2013.

12. Based on my review of Mr. Rosenberg's employment records, at the time of his separation from employment on February 20, 2013, Mr. Rosenberg's base salary was $256,791.36.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on April 30, 2014 at Aptos, California.

Robert DeVincenzi

# EXHIBIT A

 MAKING A SAFER WORLD.

September 13, 2011

Mr. Aaron Rosenberg
1409 Pine Avenue
Manhattan Beach, California 90266

Dear Aaron:

Redflex Traffic Systems Inc (the "Company") is pleased to confirm the terms of your employment. This letter agreement (this "Agreement") sets forth the terms of your employment with the Company as well as our understanding with respect to any termination of that employment relationship. You will be referred to herein either as "you" or "Employee," as the case may be.

Position, Duties and Responsibilities

You will be employed by the Company as its Executive Vice President of Sales and Business Development reporting to the Chief Executive Officer (the "CEO"). You agree to devote your full business time, energy and skill to your duties at the Company. Your duties will include, but not be limited to, those duties normally performed by a person in this position, as well as any other reasonable duties that may be assigned to you from time to time.

Term

The term of your employment, pursuant to this Agreement will commence August 1st 2011 and will continue for 24 months, until July 31st 2013, or the termination of this agreement as described in Section 5, whichever shall occur first. This Agreement may be extended for a mutually agreed upon term.

Compensation and Benefits

Remuneration arrangements will be in-line with the Company's Remuneration Strategy approved by the Board.

Salary

Your salary will be $249,312 per annum, or pro-rata for any partial years of employment, paid according to the Company's regular payroll schedule and procedures, and is subject to annual review in accordance with Section 4 Salary Reviews.

Your Salary is the basis for salary reviews and is the reference point for rewards under the Company's short term and long term incentive plans.

### 3.2. Short Term Incentive Plan (STIP)

There are 2 components of the STIP – incentives related to achievement of budget performance (Component 1) and an additional incentive based on over-performance against budget of the Redflex Group on Net Profit after Taxation (Component 2).

The STI for your position is:
Maximum for Component 1 – 30% of Salary
Maximum including Component 2 – 60% of Salary

STI will be assessed annually against key performance indicators in the following proportions:
30% of the STI for Group profit performance
40% of the STI for division-profit performance
0% of the STI for Individual performance

The value of the STI payable on individual performance against KPIs will be assessed by the CEO on a scale between zero and the maximum payable, and is subject to board approval.

**Timetable**
The Company expects to deliver STI outcomes on about 1 October each year, after consideration of the financial year results and individual performance.

### 3.3. Incentive Bonus

In your position as EVP of Sales and Business Development you will be eligible for a business unit performance incentive related to the Business Development endeavors. The incentive bonus is based on annual performance of the Business Development Unit and will be paid in quarterly installments. Payment will be made on or before the first payday that is at least fifteen (15) days after the Finance/Accounting unit has produced an income statement for the Business Development Unit for the previous quarter.

The plan includes both a business unit performance incentive based on program profitability for new business from business development not included in the core offering of red light and speed enforcement (such as school bus enforcement and other programs as mutually agreed between you and the CEO) and the STI bonus component based on the Company's Remuneration Strategy for the core red light and speed business.

The amount of the bonus will be a percentage of EBITDA. It will include all new contracts executed that are not included the company's core offering of red light and speed enforcement (such as school business enforcement and other programs as mutually agreed between you and the CEO). The percentage shall be as follows:
- 3%: 1st 12 month period of contract revenue
- 2%: All subsequent years of contract revenue

All contract executed under your previous employment agreement will continue to be compensated as outlined. The amount of the bonus will be a percentage of EBITDA and the percentages shall be as follows:
- 5%: 1st 12 month period of contract revenue
- 3%: 2nd 12 month period of contract revenue
- 2%: All subsequent years of contract revenue

Amended September 23, 2011

Aaron Rosenberg: Personal Performance Objectives for STI (FY 2012)
For Performance Period July 1, 2011 thru June 30, 2012

Objective #1 – Hiring Sales Resources – (25%)
Hire sales resources in the key markets of CA, FL, TX and the Northeast

Measurement:
Successfully hire four sales resources before September 30, 2011.

Objective #2 – New Contract Executions – (50% overall)
Execute 23 New Contracts

Measurement:
Execute 23 new contracts before June 30, 2012

Objective #3 – Budget – (10%)
Manage Sales and Business Development cost center budgets to come in at or below budget.

Measurement:
End FY12 at or below proposed cost center budget for the year.

Objective #4 – New Builds – (15% overall)
Deliver 96 Builds as submitted in the F12 Revenue Model or from a combination of alternative contracts, not expressly captured in the FY12 Revenue Model.

Measurement:
96 new system installations as listed on the CPM reports

_[signature]_       9-28-11
Employee Signature       Date

Amended September 23, 2011

### 3.2. Short Term Incentive Plan (STIP)

There are 2 components of the STIP – incentives related to achievement of budget performance (Component 1) and an additional incentive based on over-performance against budget of the Redflex Group on Net Profit after Taxation (Component 2).

The STI for your position is:
Maximum for Component 1 – 30% of Salary
Maximum including Component 2 – 60% of Salary

STI will be assessed annually against key performance indicators in the following proportions:
30% of the STI for Group profit performance
40% of the STI for division profit performance
30% of the STI for individual performance

The value of the STI payable on individual performance against KPIs will be assessed by the CEO on a scale between zero and the maximum payable, and is subject to board approval.

### Timetable

The Company expects to deliver STI outcomes on about 1 October each year, after consideration of the financial year results and individual performance.

### 3.3. Incentive Bonus

In your position as EVP of Sales and Business Development you will be eligible for a business unit performance incentive related to the Business Development endeavors. The incentive bonus is based on annual performance of the Business Development Unit and will be paid in quarterly installments. Payment will be made on or before the first payday that is at least fifteen (15) days after the Finance/Accounting unit has produced an income statement for the Business Development Unit for the previous quarter.

The plan includes both a business unit performance incentive based on program profitability for new business from business development not included in the core offering of red light and speed enforcement (such as school bus enforcement and other programs as mutually agreed between you and the CEO) and the STI bonus component based on the Company's Remuneration Strategy for the core red light and speed business.

The amount of the bonus will be a percentage of EBITDA. It will include all new contracts executed that are not included the company's core offering of red light and speed enforcement (such as school business enforcement and other programs as mutually agreed between you and the CEO). The percentage shall be as follows:
- 3%: 1st 12 month period of contract revenue
- 2%: All subsequent years of contract revenue

All contract executed under your previous employment agreement will continue to be compensated as outlined. The amount of the bonus will be a percentage of EBITDA and the percentages shall be as follows:
- 5%: 1st 12 month period of contract revenue
- 3%: 2nd 12 month period of contract revenue
- 2%: All subsequent years of contract revenue

The contracts applicable under this provision carried over from your previous contract include:

| City | Executed |
|---|---|
| Livingston Parish, LA | 1-Jul-08 |
| Jonesborough, TN | 16-Jul-08 |
| West Carrollton, OH | 29-Jul-08 |
| Morristown, TN | 15-Aug-08 |
| Oak Ridge, TN | 29-Aug-08 |
| Sulphur, LA | 11-Sep-08 |
| Westwego, LA | 11-Sep-08 |
| Las Cruces, NM | 23-Sep-08 |
| Zachary, LA | 23-Sep-08 |
| Virginia Beach, VA | 1-Oct-08 |
| Clarksville, TN | 17-Nov-08 |
| Superior, AZ | 17-Nov-08 |
| Show Low, AZ | 8-Dec-08 |
| Heath, OH | 23-Dec-08 |
| El Mirage, AZ | 16-Jan-09 |
| Middletown, OH | 20-Feb-09 |
| Phoenix, AZ | 29-May-09 |
| Bullhead City, AZ | 2-Jun-09 |
| Parma Heights, OH | 6-Oct-09 |
| Center Point, AL | 3-Mar-10 |
| Columbus, OH | Jul-10 |
| Dayton, OH | Mar-11 |

Bonuses related to any contract subject to these percentages in excess of $1,000,000 in annual revenue will be individually negotiated between the Sales person and the CEO prior to significant pursuit of the contract.

### 3.4. Auto Allowance

Your automobile allowance will be $541.88/month with a one-time payment of $5,000 for a down payment.

### 3.5. Long Term Incentives (LTI)

The Redflex LTI Plan is based on annual Performance Rights grants with performance for each annual grant measured over a three-year measurement period, on the basis of the Company's relative Total Shareholder Return (TSR) performance compared with the TSR performance of a comparator group consisting of companies in the S&P/ASX300 at grant date. Each grant may vest in full or in part, or not at all, depending on performance.

Each Performance Right is a right to acquire one ordinary Redflex Holdings Limited share, subject to satisfaction of the relevant performance hurdle.

The maximum LTI opportunity for your position is 60% of salary.

The threshold proportion (50% of the maximum LTI) of Performance Rights will vest if the Redflex TSR performance exceeds the TSR performance of the Company at the median of the companies in the comparator group. All of the Performance Rights in a grant will vest if the Redflex TSR performance is greater than or equal to the TSR performance achieved by 75% of the companies in the comparator group. For Redflex TSR performance between these two points, the number of Performance Rights that vest will increase on a straight-line basis. In accordance with normal market practices, the share prices of all companies will be averaged over three months at the beginning and end of measurement periods to minimise the impact of short term fluctuations.

Each grant of performance rights is subject to the Redflex Holdings Limited Long-Term Incentive Plan Rules – United States Executives.

### 3.6. Other Benefits

You are entitled to participate in any other benefits that are generally available to all other similarly situated Company personnel from time to time. This includes participation under any Company medical, disability or other group insurance plans and no less than three (3) weeks paid vacation per year, which you will accrue in accordance with Company policy. You agree to make good faith efforts to schedule vacations so as to cause least conflict with the conduct of the Company's business.

### 3.7. Income Tax

You and the Company acknowledge that it is the intention of the Company to deduct all amounts paid under this Agreement as ordinary and necessary business expenses for income tax purposes. You agree and represent that you will treat all such amounts as ordinary income for income tax purposes.

## 4. Salary Reviews

Salary for your position will be reviewed by the CEO each year, and may be subject to adjustment based upon various factors including, but not limited to your individual performance, Company-wide performance, business unit performance, relevant comparative remuneration in the market and internal and, where appropriate, external advice on policies and practices. Any adjustment to your salary shall be at the sole discretion of the CEO and is subject to board approval. Any adjustment in your salary will be applied at 1 October each year.

## 5. Termination of Employment

### 5.1. At Will Relationship

Although both parties begin this relationship with the hope that it will be long-standing, both parties expressly understand that employment is at the will of either party. There is no promise that employment will continue for a set period of time, nor is there any promise that your employment will be terminated only in particular circumstances. Either you or the Company may terminate your employment for any lawful reason, or no reason, with or without cause.

### 5.2. Termination Effect on STI and LTI

The STI and LTI brochures contain details of the termination effect on STI and LTI arrangements.

#### 5.3. Voluntary Termination

In the event that you voluntarily resign from your employment with the Company, or in the event that your employment terminates as a result of your death or disability, you will be entitled to no compensation or benefits from the Company other than those earned under Paragraph 3 through the date of your termination.

You agree that if you voluntarily terminate your employment with the Company for any reason you will provide the Company with 30 days' written notice of your resignation. The Company may, in its sole discretion, elect to waive all or any part of such notice period and accept your resignation at an earlier date.

#### 5.4. Termination of Employment

The Employee's employment by the Company: (a) shall terminate upon the Employee's death or disability; (b) may be terminated by the Company for any reason other than "Cause" at any time; (c) may be terminated by the Company for "Cause" (as defined below) at any time; (d) may be terminated by the Employee, without cause or reason at any time upon thirty (30) days' prior written notice delivered by the Employee to the Company; and/or (e) may be terminated by the Employee for "Good Reason" (as defined below) at any time.

5.4.1. The term "Cause" in the event of termination of the Employee's employment by the Company means the reasonable belief by the CEO and/or a majority of the Board of Directors that any of the following has occurred: (1) Employee's misappropriation (or attempted misappropriation) of any of the Company's funds or property; (2) Employee's conviction of, the indictment for (or its procedural equivalent), or the entering of a guilty plea or plea of no contest with respect to a felony or a misdemeanor that involves moral turpitude or a fraudulent act; (3) Employee's Non-Performance, as defined in Section 5.3; (4) Employee has committed acts that jeopardize (or might jeopardize) the good will, reputation and/or business standing in the community of the Company or its management; (5) Employee has committed acts of dishonesty or insubordination toward the Company or its management; and/or (6) Employee's breach of any of the material terms of this Agreement.

5.4.2. "Good Reason" for termination of the Employee's employment by the Employee will be deemed to occur if the Company intentionally engages in conduct sufficient to meet the legal standard of "constructive discharge" under Arizona law or commits a material breach of the terms of this Agreement which cannot be, or is not, cured within a reasonable time, not less than thirty (30) days after written notice. "Good Reason" will not exist by reason of a change in Employee's title or job duties that does not materially affect Employee's overall compensation.

5.4.3. The term "Non-Performance" by the Employee in the event of termination of the Employee's employment by the Company means the determination by the CEO and a super-majority (greater than 75%) of the members of the Board of Directors of the Company, in their sole and absolute discretion, that the Employee is not performing his duties under this Agreement after the Board of Managers of the Company has delivered to the Employee written notice which specifically identifies the manner in which the Board believes he is not performing her duties and which is not or cannot be cured within 30 days after such written notice is delivered to the Employee.

### 6. Consequences of Termination

#### 6.1 Consequences of Termination by the Company or any reason other than for Cause

If the Employee's employment is terminated by the Company for any reason other than for Cause, (i) the Company will pay the Employee, in full satisfaction of all of its compensation (base salary and bonus) obligations under this Agreement, an amount equal to the sum of any base Salary due to the Employee through the last day of employment, plus any accrued bonus to which the Employee may have been entitled on the last day of employment, but had not yet been received; and (ii) the Company will continue to pay Employee's Salary and employer-paid portions of employee benefits for a period of one week for every four months of completed service up to a maximum of 39 weeks and subject to a minimum of 6 weeks, after the effective date of the termination. In the event Employer terminates Employee for "Cause" and it is subsequently established that "Cause" was not sufficient to justify the termination, the payments provided in this sub-Section shall be Employee's sole and exclusive remedy for such termination.

*[margin note: 39 weeks severance]*

#### 6.2 Consequences of Termination for Cause by the Company

If the Employee's employment is terminated by the Company for Cause, (i) the Company will pay the Employee, in full satisfaction of all of its compensation (base salary and bonus) obligations under this Agreement, an amount equal to the sum of any base salary due to the Employee through the last day of employment, plus any accrued bonus to which the Employee may have been entitled on the last day of employment, but had not yet been received; and(ii) the Employee's benefits and rights under any Benefit Plan shall be paid, retained or forfeited in accordance with the terms of such plan; provided, however, that Employer shall have no obligation to make any payments toward these benefits for Employee from and after termination.

*[margin note: no severance]*

#### 6.3 Consequences of Termination by the Employee for any reason other than for Good Reason or Employee's Death or Disability

If Employee's employment is terminated by the Employee for any reason other than for Good Reason or Employee's death or disability, (i) the Company will pay the Employee, in full satisfaction of all of its compensation (base salary and bonus) obligations under this Agreement, an amount equal to the sum of any base salary due to the Employee through the last day of employment, plus any accrued bonus to which the Employee may have been entitled on the last day of employment, but had not yet been received; and (ii) the Employee's benefits and rights under any Benefit Plan, other than any basic health and medical benefit plan, shall be retained or forfeited in accordance with the terms of such plan; provided, however, that Employer shall have no obligation to make any payments toward these benefits for Employee from and after termination.

#### 6.4 Consequences of Termination by the Employee for Good Reason

If the Employee's employment is terminated by Employee for Good Reason as defined in 5.4, (i) the Company will pay the Employee, in full satisfaction of all of its compensation (base salary and bonus) obligations under this Agreement, an amount equal to the sum of any base Salary due to the Employee through the last day of employment, plus any accrued bonus to which the Employee may have been entitled on the last day of employment, but had not yet been received; and (ii) the Company will continue to pay Employee's Salary and employer-paid portions of employee benefits for a period of six weeks after the effective date of the termination.

### 7. Business Expenses

The Company shall reimburse you for all reasonable business-related travel and accommodation expenses, telephone, facsimile and mobile telephone charges incurred by you on behalf of the Company, and reasonable entertainment and out-of-pocket expenses incurred by you on behalf of the Company. You will be required to submit appropriate records to support your business expenses as required by the Company.

### 8. Personnel Policies and Procedures

You agree to abide by the Company's policies and procedures as they are issued from time to time.

### 9. Confidential and Proprietary Information

As a condition of your employment you agree to sign the Company's 'California" standard form of Confidentiality, Invention Assignment, and Non-disruption Agreement and shall preserve the CAL. BPC. CODE § 16600.

### 10. Duty of Loyalty

What you must do:

During your employment, in addition to performing the specific duties of your position you agree to:

(a) serve Redflex faithfully and diligently exercising all due care;
(b) act at all times in Redflex's best interests;
(c) refrain from acting, or being seen to act in conflict with Redflex's best interests;
(d) use best endeavours to protect and promote Redflex's reputation;
(e) use best abilities and knowledge to perform the duties assigned from time to time;
(f) at all times abide by Redflex's policies, procedures and professional service standards as in place from time to time;
(g) at all times display a thorough and professional manner, upholding and maintaining Redflex's reputation and goodwill and relationships with its customers;
(h) display the highest ethical and professional standards of service delivery and confidentiality towards Redflex and its customers; and
(i) comply with the obligations specified in the Confidentiality Invention Assignment, Non-Compete and Non-Disruption Agreement.

What you must not do:

While an employee, you agree to not, without prior written approval, undertake any appointment position or work that:

a) results in you competing with Redflex;
b) otherwise adversely affects Redflex or
c) hinders the performance of your duties owed to Redflex.

Nothing in these Terms will be construed to limit your duties of good faith or fidelity to Redflex or any other duties implied in common law.

### 11. Indemnification

As an Officer, the Company shall indemnify, defend and hold you harmless during and after your employment with the Company from and against damages, liabilities, costs and expenses (including reasonable attorneys' fees) arising out of any third party claim against the Company (excluding any damages, liabilities, costs or expenses arising from your intentional, wilful or grossly negligent conduct) to the full extent required or permitted by applicable state law.

### 12. Severability

The provisions of this Agreement are severable and if any one or more provisions is or may be determined by a court of competent jurisdiction to be unenforceable, in whole or in part, the remaining provisions of this Agreement shall nevertheless be binding and enforceable to the maximum extent permitted by law.

### 13. Governing Law

As required by law, this offer of employment is subject to proof of your right to work in the United States. It is acknowledged that the Company is based in Maricopa County, Arizona, and has an interest in uniform application and enforcement of its employment relationships. Accordingly, your employment and any and all agreements related to such employment shall be governed in all respects by Arizona (or U.S. federal law, if applicable), as applies to transactions occurring entirely within Arizona between Arizona residents. Any action or proceeding arising out of your employment or any agreement related to your employment shall be brought or maintained exclusively in the Arizona State or Federal Courts of appropriate jurisdiction sitting in Maricopa County, Arizona.

> "arising out of employment"

### 14. Complete Agreement

This Agreement constitutes the complete embodiment of your employment relationship with the Company and supersedes any other promises, warranties, representations or agreements regarding your employment whether oral or written.

If you choose to accept our offer of employment as described above, please sign below and return this Agreement to me. Please also sign and return the Confidentiality Agreement attached.

We look forward to a mutually productive and enjoyable working relationship.

Yours sincerely

*Karen Finley*

Karen Finley
Chief Executive Officer
Redflex Traffic Systems Inc.

Accepted and Agreed:

_____  9-13-11
Aaron Rosenberg                Date

ATTACHMENTS: REDFLEX TRAFFIC SYSTEMS CONFIDENTIALITY, INVENTION,

ASSIGNMENT, AND NON-DISRUPTION AGREEMENT (California)

EXHIBIT A Prior Inventions (If Any)

EXHIBIT B Limited Exclusion Notification

REDFLEX TRAFFIC SYSTEMS CONFIDENTIALITY,