JOHN P. LeCRONE (State Bar No. 115875)
 johnlecrone@dwt.com
JONATHAN L. SEGAL (State Bar No. 264238)
 jonathansegal@dwt.com
EVELYN F. WANG (State Bar No. 273622)
 evelynwang@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Fax: (213) 633-6899

Attorneys for Defendants
REDFLEX TRAFFIC SYSTEMS, INC., and
REDFLEX TRAFFIC SYSTEMS
(CALIFORNIA), INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

AARON M. ROSENBERG, an
individual,

            Plaintiff,

      vs.

REDFLEX TRAFFIC SYSTEMS, INC.,
an Arizona corporation; REDFLEX
TRAFFIC SYSTEMS (CALIFORNIA),
INC., a California corporation;
REDFLEX TRAFFIC SYSTEMS, INC., a
Delaware corporation; REDFLEX
HOLDINGS LIMITED, an Australian
form of entity unknown; and DOES 1
through 25, inclusive,

Case No.

**DECLARATION OF JOHN
LeCRONE IN SUPPORT OF
DEFENDANT REDFLEX TRAFFIC
SYSTEMS, INC.'S NOTICE OF
REMOVAL**

CV14-3420 GW RZ

COPY

# DECLARATION OF JOHN LeCRONE

I, John LeCrone, declare and state as follows:

1.      I am an attorney admitted to practice before the courts of the State of California and before this federal district court.  I am a partner in the law firm of Davis Wright Tremaine LLP, and I am counsel for defendants Redflex Traffic Systems, Inc. (hereafter "Redflex DE") and Redflex Traffic Systems (California) Inc. (hereafter "Redflex CA").  I have personal knowledge of the matters set forth herein, and if called upon to do so, I could and would testify competently thereto.

2.      Plaintiff Aaron Rosenberg filed his Complaint, *Aaron Rosenberg v. Redflex Traffic Systems, Inc. et al.*, Case No. BC536891, in the Superior Court of the State of California for the County of Los Angeles on February 19, 2014 (the "California Action").  In the California Action, Plaintiff alleges claims for wrongful termination in violation of public policy, violation of California Labor Code § 1102.5, and violation of California Labor Code § 2802 against defendants Redflex DE, Redflex CA, Redflex Holdings Limited, and an Arizona corporation that does not exist.

3.      Plaintiff's claims in the California Action arise from his employment with Redflex DE.  I am informed and believe that Plaintiff was solely an employee of Redflex DE and was never an employee of Redflex CA.

4.      At the time Mr. Rosenberg filed the California Action, he was, and continues to be, a defendant in a lawsuit filed on February 20, 2013 by his former employer, Redflex DE, in the Superior Court of the State of Arizona for the County of Maricopa, entitled *Redflex Traffic Systems, Inc. v. Aaron M. Rosenberg and Lisa F. Rosenberg*, Case No. CV2013-001166 (the "Arizona Action").  Attached hereto as **Exhibit A** is a true and correct copy of the Complaint in the Arizona Action.  In the Arizona Action, Redflex DE, as the plaintiff, alleges claims for fraud, breach of contract, and breach of implied covenant of good faith and fair dealing against Aaron

1  Rosenberg based on acts committed by Mr. Rosenberg during his employment with
2  Redflex DE.

3       5.     On or about October 11, 2013, Mr. Rosenberg filed his Answer and
4  asserted Counterclaims for defamation and intentional infliction of emotional distress
5  in the Arizona Action. Attached hereto as **Exhibit B** is a true and correct copy of the
6  Answer and Counterclaims filed by Mr. Rosenberg in the Arizona Action.
7  Thereafter, on or about November 5, 2013, Redflex DE filed a Motion to Dismiss the
8  intentional infliction of emotional distress counterclaim. The Arizona Court granted
9  Redflex DE's Motion to Dismiss on or about February 25, 2014.

10      6.     On or about April 1, 2014, Mr. Rosenberg filed a Motion for Leave to
11 File Amended Counterclaim in the Arizona Action. Attached hereto as **Exhibit C** is
12 a true and correct copy of the Motion for Leave to File Amended Counterclaim filed
13 by Mr. Rosenberg in the Arizona Action. On or about April 4, 2014, Mr. Rosenberg
14 filed an Amended Motion for Leave to File Amended Counterclaim in the Arizona
15 Action. Attached hereto as **Exhibit D** is a true and correct copy of the Amended
16 Motion for Leave to File Amended Counterclaim filed by Mr. Rosenberg in the
17 Arizona Action. On or about April 16, 2014, Redflex DE filed a Notice of Non-
18 Opposition to the Rosenbergs' Amended Motion for Leave to File Amended
19 Counterclaim in the Arizona Action.

20      7.     In the California Action, Mr. Rosenberg names as a defendant and
21 alleges claims against an entity named in the Complaint as "Redflex Traffic Systems,
22 Inc., an Arizona Corporation." I searched the public business records of the Arizona
23 Corporation Commission, State of Arizona Public Access System, and there is no
24 record of an entity named "Redflex Traffic Systems, Inc." organized and existing
25 under the laws of the State of Arizona. The Arizona Corporation Commission, State
26 of Arizona Public Access System's only record for "Redflex Traffic Systems, Inc." is
27 for Redflex DE, a corporation organized and existing under the laws of the State of
28

Delaware, with its principal place of business at 23751 N 23rd Avenue, Phoenix, Arizona 85085.

   I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on May 2, 2014 at Los Angeles, California.

John LeCrone

DECLARATION OF JOHN LECRONE
DWT 23996362v2 0090234-000018

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566

# EXHIBIT A



1   *Cohen Kennedy Dowd & Quigley*
    *The Camelback Esplanade I*
2   *2425 East Camelback Road • Suite 1100*
    *Phoenix, Arizona 85016*
3   *Telephone 602•252•8400  Facsimile 602•252•5339*
    *E-mail filings@ckdqlaw.com*
4
5   Daniel P. Quigley (009809) dquigley@ckdqlaw.com
    Betsy J. Lamm (025587) blamm@ckdqlaw.com
6   *Attorneys for Plaintiff Redflex Traffic Systems, Inc.*

7

8                    **ARIZONA SUPERIOR COURT**

9                      **MARICOPA COUNTY**

10  REDFLEX TRAFFIC SYSTEMS, INC., a       )   Cause No.
    Delaware corporation,                   )              CV2013-001166
11                                          )
         Plaintiff,                         )
12                                          )   **COMPLAINT**
    vs.                                     )
13                                          )
    AARON M. ROSENBERG and LISA F.          )   **Jury Trial Demanded**
14  ROSENBERG, husband and wife,            )
                                            )
15       Defendants.                        )
                                            )
16  _____ )

17

18       Plaintiff Redflex Traffic Systems, Inc. ("Redflex"), for its Complaint against Aaron M.

19  Rosenberg ("Mr. Rosenberg") and Lisa F. Rosenberg (collectively, "Defendants") alleges as

20  follows:

21                      <u>NATURE OF THE CASE</u>

22
23       1.      This action arises out of Mr. Rosenberg's intentional and secret scheme while

24  Redflex's Executive Vice President of Sales to misappropriate funds from Redflex and to

25  commit other dishonest and unethical acts in violation of Mr. Rosenberg's agreements with,

26  and obligations to, Redflex.  Redflex seeks in this action both compensatory damages for the

27

1  substantial injury to its business caused by Mr. Rosenberg's misconduct and exemplary damages

2  to deter him and others from engaging in similar misconduct in the future.

3      2.      Redflex also seeks declaratory relief regarding Mr. Rosenberg's recent allegations,

4  transparently made in an attempt to deflect attention from his misconduct, that Redflex

5  somehow mistreated him and made defamatory remarks relating to his employment related

6  misconduct. Mr. Rosenberg's allegations and resulting demands upon Redflex are without any

7  merit and have created an actual controversy between the parties.

8
9                          **PARTIES, JURISDICTION AND VENUE**

10     3.      Plaintiff Redflex is a corporation organized and existing under the laws of the

11 State of Delaware, with its principal place of business in Phoenix, Arizona.

12     4.      Defendants Aaron M. Rosenberg and Lisa F. Rosenberg are husband and wife

13 and are residents of California.    Until February 20, 2013, Mr. Rosenberg served as the

14 Executive Vice President of Sales and Business Development for Redflex. Mrs. Rosenberg is

15 included as a defendant for the sole purpose of ensuring jurisdiction over the Rosenberg marital

16 community. Mr. Rosenberg's conduct alleged in this Complaint was on his own behalf and on

17 behalf of the Rosenberg marital community.

18     5.      This Court has subject matter jurisdiction over this action pursuant to the

19 Arizona Constitution, Article VI, § 14, and A.R.S. § 12-123.

20     6.      Personal jurisdiction and venue are proper in this Court, as Defendants have

21 caused events to occur in Maricopa County, Arizona, which give rise to this Complaint and as

22 Redflex's principal place of business is in Maricopa County.    Moreover, pursuant to Mr.

23 Rosenberg's written employment agreements with Redflex, Mr. Rosenberg agreed that any

*Cohen Kennedy Dowd & Quigley*

2

claims arising out of or related to his employment at Redflex "shall be brought or maintained

exclusively" in Maricopa County.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### Redflex: A Brief Introduction

7.       Redflex is a provider of photographic traffic law enforcement services, including

automated services designed to aid in the enforcement of roadway speed limits, traffic signals at

roadway intersections and adherence to school bus stop laws ("Photo Traffic Enforcement

Services"). Redflex offers its Photo Traffic Enforcement Services to cities, towns, county

organizations and/or government agencies in Arizona and throughout the United States.

### Mr. Rosenberg's Employment at Redflex

8.       From March 2002 to February 2013, Mr. Rosenberg was an at-will employee of

Redflex. During his employment, a series of employment agreements between Mr. Rosenberg

and Redflex defined Mr. Rosenberg's duties and obligations to the company.

9.       Effective March 4, 2002, Mr. Rosenberg and Redflex entered into a letter

agreement setting forth the terms of Mr. Rosenberg's employment as Vice President of Sales

for North America and attaching, among other items, the Redflex Personnel Policies and

Procedures Handbook ("2002 Employment Agreement").

10.       Mr. Rosenberg acknowledged and agreed in the 2002 Employment Agreement

that his position with Redflex required "fiscally responsible management practices." Mr.

Rosenberg's 2002 Employment Agreement further provided for reimbursement of only

"[a]pproved business-related means and client entertainment expenses," submitted via "a

monthly expense report to document all expenses for reimbursement."

3

11.     On June 22 and August 4, 2006, Mr. Rosenberg and Redflex entered into a second letter agreement setting forth the terms of Mr. Rosenberg's employment as Vice President of Sales & Marketing ("2006 Employment Agreement").

12.     On November 18 and December 2, 2008, Mr. Rosenberg entered into a third letter agreement setting forth the terms of Mr. Rosenberg's employment as Executive Vice President of Business Development for the company ("2008 Employment Agreement").

13.     On September 13, 2011, Mr. Rosenberg and Redflex entered into fourth letter agreement setting forth the terms of Mr. Rosenberg's employment as Redflex's Executive Vice President of Sales and Business Development ("2011 Employment Agreement").

14.     In the 2006, 2008 and 2011 Employment Agreements, Mr. Rosenberg agreed to, among other items, (i) "at all times abide by Redflex's policies, procedures and professional service standards as in place from time to time"; (ii) "at all times display a thorough and professional manner, upholding and maintaining Redflex's reputation and goodwill and relationships with its customers"; and (iii) "display the highest ethical and professional standards of service delivery and confidentiality towards Redflex and its customers."

15.     Mr. Rosenberg's 2006, 2008 and 2011 Employment Agreements further provided that Redflex would reimburse Mr. Rosenberg for "reasonable business-related travel and accommodation expense . . . and reasonable entertainment and out-of-pocket expenses incurred by [him] on behalf of [Redflex] . . . [with] appropriate records to support [his] business expenses as required by the Company."

4

16.     Under each of the Employment Agreements, expense reimbursement was available to Mr. Rosenberg only for "reasonable business-related" expenses and was unavailable for expenses of a personal nature.

17.     Moreover, under each of the Employment Agreements, expense reimbursement for "entertainment" was limited to "reasonable" expenses, with appropriate supporting documentation.

18.     Mr. Rosenberg agreed in each of the Employment Agreements to abide by all provisions in the Redflex Employee Handbook and Redflex Personnel Policies and Procedures Handbook, including but not limited to Redflex's standards of conduct, code of ethics, conflicts of interest and expense reimbursement policies set forth in the Handbooks.  Moreover, during the course of his employment, Mr. Rosenberg repeatedly executed updated versions of the Redflex Employee Handbook and Redflex Personnel Policies and Procedures Handbook.

19.     Mr. Rosenberg further executed the Redflex Employee Code of Ethics and agreed to, among other items, (i) "always act in a manner that merits public trust and confidence"; (ii) refrain from taking "any action, either personally or on behalf of the company, which will violate any law or regulation affecting our business"; (iii) "avoid all circumstances that could produce conflicts or the appearance of conflicts between your personal interests and those of the Company"; (iv) "adhere to and fully comply with all of the Company's policies and procedures, including the Code, the Policy and the Redflex Traffic Systems Personnel Policies and Procedures Handbook"; and (v) "refrain from behavior or conduct that is offensive or undesirable, or which is contrary to the Company's best interests."

5

20.     Although Mr. Rosenberg was an "at-will" employee, his 2006, 2008 and 2011 Employment Agreements defined the parties' rights and obligations if Redflex terminated Mr. Rosenberg's employment for "Cause."

21.     The 2006, 2008 and 2011 Employment Agreements defined "Cause" as a "reasonable belief by the CEO and/or a majority of the Board of Directors that any of the following has occurred: (1) Employee's misappropriation (or attempted misappropriation) of any of the Company's funds or property; . . . (4) Employee has committed acts that jeopardize (or might jeopardize) the good will, reputation and/or business standing in the community of the Company or its management; (5) Employee has committed acts of dishonesty or insubordination toward the Company or its management; and/or (6) Employee's breach of any of the material terms of this Agreement."

22.     Mr. Rosenberg also agreed in the 2006, 2008 and 2011 Employment Agreements that his "employment and any and all agreements related to such employment shall be governed in all respects by Arizona (or U.S. federal law, if applicable), as applies to transactions occurring entirely within Arizona between Arizona residents.  Any action arising out of [his] employment or any agreement related to [his] employment shall be brought or maintained exclusively in the Arizona State or Federal Courts of appropriate jurisdiction sitting in Maricopa County, Arizona."

### Mr. Rosenberg's Wrongful Conduct

23.     Over a number of years Mr. Rosenberg engaged in a pattern of intentional and wrongful conduct in direct violation of the 2002, 2006, 2008 and 2011 Employment Agreements and Redflex's policies and practices.  Mr. Rosenberg's misconduct includes:  (i)

6

numerous submissions to Redflex for reimbursement of thousands of dollars in expenses of a personal nature, wholly unrelated to the business of Redflex; (ii) numerous submissions to Redflex for reimbursement of thousands of dollars in expenses that were not for legitimate Redflex-related business; (iii) inappropriate payments and gifts on behalf of Redflex to employees or agents of Redflex customers or potential Redflex customers; (iv) attempts to conceal his misconduct by, for example, submitting expense reports without supporting documentation, altering the dates the charges were incurred and altering the description of the charges on the expense reports so as to disguise their true nature; and (v) misrepresenting and concealing his misconduct when directly questioned about that conduct.

24.     Mr. Rosenberg's misleading and disguised reimbursement requests for personal and other inappropriate expenses, and his resulting receipt of Redflex funds, were contrary to and breached the 2002, 2006, 2008 and 2011 Employment Agreements.

25.     When confronted with evidence of his serious misconduct, Mr. Rosenberg in fact admitted to some of the misconduct.   Mr. Rosenberg, however, has failed to return the misappropriated funds to Redflex.

26.     Mr. Rosenberg's dishonest and unethical conduct has substantially harmed Redflex's business reputation and goodwill throughout the United States and has and will continue to cause Redflex significant damage.

27.     As a result of his misconduct, Redflex terminated Mr. Rosenberg's employment for Cause on February 20, 2013.

7

### Mr. Rosenberg's Allegations of Defamation

28.     In October 2012, Redflex received inquiries from a reporter with the Chicago Tribune concerning allegations of misconduct by Redflex employees or representatives.

29.     Redflex responded to these inquiries generally and without identifying any specific Redflex-employee involved in the alleged misconduct.  Redflex also specifically requested that the Chicago Tribune refrain from identifying the names of any Redflex employees the Chicago Tribune believed from information provided by others may have been involved.

30.     Notwithstanding Redflex's statements and request, the Chicago Tribune, on its own, attributed some of the alleged misconduct to Mr. Rosenberg.

31.     On December 10, 2012, Mr. Rosenberg, through counsel, sent Redflex a demand letter accusing Redflex of making "a number of false public statements about Mr. Rosenberg, erroneously accusing him of wrongdoing . . . and misrepresenting the company's response to Mr. Rosenberg's supposed conduct."  Mr. Rosenberg further accused Redflex of identifying him by name to the Chicago Tribune and distributing false statements about him to the financial markets, to Redflex employees and to Redflex customers.

32.     Mr. Rosenberg alleged that Redflex's statements have tarnished his reputation and seeks significant damages from Redflex.

33.     Mr. Rosenberg has threatened litigation against Redflex based on his accusations.

34.     Mr. Rosenberg's allegations that Redflex defamed him are without merit.

8

35.     An actual, justiciable controversy exists and Redflex seeks a declaration pursuant to A.R.S. § 12-1831 *et seq.* and Ariz. R. Civ. P. 57 that Mr. Rosenberg's accusations against Redflex are without merit.

## FIRST CLAIM FOR RELIEF
### (Fraud)

36.     Redflex repeats the allegations set forth in paragraphs 1 through 35.

37.     As set forth above, Mr. Rosenberg engaged in a protracted and covert scheme to misappropriate funds from Redflex through the submission to the company of false requests for expense reimbursement.  Through his expense reports, Mr. Rosenberg misrepresented to Redflex that the expenses submitted pertained to approved business-related activities and were not of a personal, inappropriate or impermissible nature.  Moreover, Mr. Rosenberg attempted to conceal the personal and improper nature of his expenses by, among other conduct, submitting expense reports without supporting documentation, altering the dates the charges were incurred and altering the description of the charges on the expense reports.

38.     Mr. Rosenberg knew that his representations in his expense reports were false when he made them.   And, Mr. Rosenberg intended that Redflex rely upon his false representations in connection with the processing and payment of his reimbursement requests.

39.     Redflex did not know that Mr. Rosenberg's representations were false. Moreover, his representations were material to Redflex in its decisions to pay Mr. Rosenberg's reimbursement requests.

40.     As a result of Redflex's reliance upon Mr. Rosenberg's false representations, Redflex has suffered significant damages.

9

41.     Mr. Rosenberg's conduct was intentional, outrageous and committed with an evil mind with the intent of causing injury to and/or in deliberate disregard of the unjustifiably substantial risk of significant harm to Redflex.  Redflex is entitled to recover not only actual damages, but also punitive damages in an amount sufficient to deter Mr. Rosenberg and others similarly situated from similar conduct in the future.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract)

42.     Redflex repeats the allegations set forth in paragraphs 1 through 41.

43.     As set forth above, Redflex entered into multiple agreements with Mr. Rosenberg, including the 2002, 2006, 2008 and 2011 Employment Agreements, related to his employment as Vice President of Sales for North America, Vice President of Sales & Marketing, Executive Vice President of Business Development and Executive Vice President of Sales and Business Development.  Mr. Rosenberg further executed and agreed to abide by Redflex's Code of Business Ethics, Personnel Policies and Procedures Handbook and Employee Handbook.

44.     Mr. Rosenberg materially breached his obligations to Redflex by his wrongful acts alleged above, including, but not limited to, falsely submitting personal and third-party expenses to Redflex for reimbursement, and for improper payments to Redflex customers or potential customer representatives.

45.     As a direct and proximate result of Mr. Rosenberg's repeated breaches of his agreements with Redflex, Redflex has incurred substantial damages in an amount to be proven at trial.

*Cohen Kennedy Dowd & Quigley*

10

46.     Redflex has incurred and continues to incur costs and attorneys' fees in the prosecution of this action.  Because this claim arises out of contract, Redflex is entitled to its reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

**THIRD CLAIM FOR RELIEF**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

47.     Redflex repeats the allegations set forth in paragraphs 1 through 46.

48.     The duty to act in good faith is implied in every contract.  The implied covenant to act in good faith and deal fairly is more expansive than the terms of the parties' agreement, and protects the spirit of the bargain by prohibiting either party from impairing the right of the other to receive the benefits which flow from the contractual relationship.  A party may breach the implied covenant of good faith and fair dealing even in the absence of a breach of an express contractual term by denying the other party the reasonably expected benefits of the agreement.

49.     By virtue of Mr. Rosenberg's employment agreements with Redflex, Mr. Rosenberg covenanted and agreed to act in good faith and deal fairly with Redflex during the course of his employment with the company.

50.     Mr. Rosenberg breached the covenant of good faith and fair dealing by engaging in the above-described misconduct, including, but not limited to, failing to act in the best interests of Redflex, misappropriating funds from the company, and engaging in a scheme to conceal his wrongdoing.  Mr. Rosenberg's misconduct has deprived Redflex of the reasonably expected benefits of its employment of Mr. Rosenberg as Executive Vice President of Sales and Business Development.

11

51.    As a direct and proximate result of Mr. Rosenberg's breach of the implied covenant of good faith and fair dealing, Redflex has suffered substantial damages in an amount to be proven at trial.

52.    Redflex has incurred and continues to incur costs and attorneys' fees in the prosecution of this action.  Because this claim arises out of contract, Redflex is entitled to its reasonable attorneys' fees pursuant to A.R.S. § 12-341.01.

## FOURTH CLAIM FOR RELIEF
### (Declaratory Relief)

53.    Redflex repeats the allegations set forth in paragraphs 1 through 52.

54.    An actual controversy exists between the parties as to the parties' rights and liabilities arising out of Redflex's statements to the Chicago Tribune regarding Mr. Rosenberg.

55.    Redflex is legally entitled to declaratory relief in this action pursuant to A.R.S. § 12-1832.

56.    The declaratory relief sought will terminate the controversy and remove any uncertainty as to the parties' rights and responsibilities relating to Redflex's statements.

57.    Pursuant to A.R.S. § 12-1831 *et seq.*, Redflex is entitled to a declaration that Redflex has not published false or defamatory statements regarding Mr. Rosenberg and Mr. Rosenberg's allegations of defamation are without merit.

## JURY DEMAND

58.    Pursuant to Ariz. R. Civ. P. 38, Redflex requests a jury trial on all claims asserted in this Complaint.

## REQUESTED RELIEF

Plaintiff Redflex Traffic Systems, Inc. requests judgment against Defendants Aaron M. Rosenberg and Lisa F. Rosenberg as follows:

A.     For actual damages in an amount to be proved at trial;

B.     For punitive damages in an amount sufficient to punish Mr. Rosenberg and deter him and others similarly situated from engaging in like conduct in the future;

C.     For a declaration that Redflex has not published false or defamatory statements about Mr. Rosenberg;

D.     For Redflex's reasonable attorneys' fees, costs and expenses incurred in this action as permitted by law, including A.R.S. § 12-341.01;

E.     For pre- and post-judgment interest on all amounts awarded at the highest rate permitted by law; and

F.     For such relief as this Court deems proper.

DATED this 20th day of February, 2013.

**COHEN KENNEDY DOWD & QUIGLEY, P.C.**
The Camelback Esplanade I
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
    Attorneys for Redflex Traffic Systems, Inc.

By: _Daniel P. Quigley_
    Daniel P. Quigley
    Betsy J. Lamm

13

# EXHIBIT B

1
**Milligan Lawless, P.C.**
**5050 N. 40th Street, Suite 200**
2
**Phoenix, Arizona 85018**
**(602) 792-3531 (Office)**
3
**(602) 307-0784 (Facsimile)**
James Burr Shields II, State Bar #011711
4
burr@milliganlawless.com
Attorneys for Defendants
5

6            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7                IN AND FOR THE COUNTY OF MARICOPA

8   REDFLEX TRAFFIC SYSTEMS, INC., )
    a Delaware corporation,                )
9                                          )        Case No. CV2013-001166
                                           )
            Plaintiff,                     )
10                                         )        **ANSWER/COUNTERCLAIM**
    vs.                                    )
11                                         )
    AARON M. ROSENBERG and LISA F.         )
12  ROSENBERG, husband and wife,           )
                                           )        (Assigned to the Honorable
13          Defendants.                    )        Douglas Rayes)
    _____       )
14                                         )
    AARON M. ROSENBERG and LISA F.         )
15  ROSENBERG, husband and wife,           )
                                           )
16          Counterclaimants,              )
                                           )
17  vs.                                    )
                                           )
18  REDFLEX TRAFFIC SYSTEMS, INC.,         )
    a Delaware corporation; DOES I-X;      )
19  BLACK PARTNERSHIPS I-X; and            )
    XYZ CORPORATIONS I-X,                  )
20                                         )
            Counterdefendants.             )
21  _____       )

22          Defendants, Aaron M. Rosenberg and Lisa F. Rosenberg, by and through counsel

23  undersigned, hereby submit their answer and counterclaim in the above-captioned matter.

24                          **DEFENDANTS' ANSWER**

25          1.      In regards to paragraph 1 of Plaintiff's complaint, Defendants affirmatively

26  allege that <u>all</u> expenses incurred by Defendant, Aaron Rosenberg, and reimbursed by Plaintiff

27  were reviewed by and approved by Plaintiff, without exception.  At no time did Defendant,

28                                          1

1    Aaron Rosenberg, misappropriate Plaintiff's funds and, as set forth in Defendants'
2    counterclaim, Plaintiff's allegations that he did so are false and defamatory. All conduct
3    attributed to Defendant, Aaron Rosenberg, set forth in Plaintiff's complaint was committed
4    with the knowledge and approval of Plaintiff. Defendant did not, in any conceivable fashion,
5    engage in any "secret scheme" or engage in any activity which was "dishonest and unethical"
6    as to Plaintiff. Rather, Plaintiff, through its former Chief Executive Officer, current Chief
7    Executive Officer ("CEO") and current and former Redflex Board Members engaged in
8    providing governmental officials with lavish gifts and bribes.  These behaviors were
9    institutionalized as it was common for the Redflex Annual Budget, which is presented by the
10   CEO and approved by the Board of Directors, to include a category titled "Entertainment."
11   "Entertainment" was further defined as "costs associated with new pursuits and ongoing
12   customer management and included activities such as meals, golf, sports outings and
13   celebratory tokens" Golf and meals are self-explanatory, but "sports outings" means events
14   like professional football and baseball games and "celebratory tokens" means gifts. A budget
15   for these items was approved and there was never a distinction between these types of
16   entertainment expenses and expenses that are considered gratuities and bribes. These
17   institutionalized behaviors, and Redflex's misrepresentation regarding and defamation of
18   Defendant Aaron Rosenberg, continued after the termination of the Defendant. For example,
19   the current Chairman of the Board and CEO of Redflex Holdings continue to make various
20   statements to the press and shareholders about cleaning house and promoting the company's
21   "highest ethical standards" and including the new management's "focus on the restoration of
22   the company's ethical compass." However, in July 2013, the Board of Directors and CEO of
23   Redflex Holdings promoted the company's existing Vice President of Account Management
24   to the position of CEO. The Board and CEO did this with full knowledge that over the years
25   this individual actively participated in and incurred lavish entertainment expenses with
26   elected officials, consultants and city officials in his efforts to secure new contracts and
27   maintain company revenue.  The Board and CEO continued to misrepresent and defame the
28                                               2

1   character of Defendant, in addition to misrepresenting the company and its "highest ethical
2   standards" to shareholders and the press.  In 2012, as explained in Defendants' counterclaim,
3   Plaintiff attempted to make a scapegoat out of Defendant by falsely accusing him of rogue
4   behavior.  Thereafter, when Defendant attempted to adhere to Plaintiff's newly introduced
5   whistleblower policy, Plaintiff's malicious treatment of Defendant, including its defamation
6   of his character, intensified.  Thus, Defendants deny the allegations set forth in the first
7   sentence of paragraph 1 of Plaintiff's complaint and deny that Plaintiff is entitled to any
8   remedy in this case.

9        2.     Although Defendants admit that Plaintiff seeks declaratory relief in this action,
10  Defendants deny all other allegations set forth in paragraph 2 of Plaintiff's complaint.

11        3.     Defendants admit paragraph 3 of Plaintiff's complaint.

12        4.     Defendants admit paragraph 4 of Plaintiff's complaint.

13        5.     Defendants admit paragraph 5 of Plaintiff's complaint.

14        6.     Defendants admit paragraph 6 of Plaintiff's complaint with the exception that
15  Defendants affirmatively allege that they are entitled to bring a common law claim for
16  wrongful discharge against Redflex Traffic Systems, Inc. in the State of California. *Holmes*
17  *v. General Dynamics Corp.*, 17 Cal.App.4th 1418 (1993).

18        7.     Defendants admit paragraph 7 of Plaintiff's complaint.

19        8.     Defendants admit paragraph 8 of Plaintiff's complaint.

20        9.     Defendants admit paragraph 9 of Plaintiff's complaint.

21       10.    Defendants admit paragraph 10 of Plaintiff's complaint.

22       11.    Defendants admit paragraph 11 of Plaintiff's complaint.

23       12.    Defendants admit paragraph 12 of Plaintiff's complaint.

24       13.    Defendants admit paragraph 13 of Plaintiff's complaint.  Further, Defendants
25  affirmatively allege that the parties' 2011 employment agreement superseded, entirely, the
26  parties' prior employment agreements pursuant to Section 14.

27       14.    Defendants admit that the citations set forth in paragraph 14 of Plaintiff's

28

1  complaint were set forth in the parties' 2011 employment agreement.

2       15.     Defendants admit that the language set forth in paragraph 15 of Plaintiff's

3  complaint is set forth in Section 7 of the parties' 2011 employment agreement.

4       16.     With respect to paragraph 16, Defendants allege that paragraph 7 of the parties'

5  2011 employment agreement speaks for itself.

6       17.     With respect to paragraph 17, Defendants allege that paragraph 7 of the parties'

7  2011 employment agreement speaks for itself.

8       18.     In regards to paragraph 18 of Plaintiff's complaint, Defendants affirmatively

9  allege that paragraph 8 of the parties' 2011 employment agreement simply provides that "you

10  agree to abide by the Company's policies and procedures as they are issued from time to

11  time." Periodically, the Human Resource Department would distribute revised Company

12  policies and procedures, but it was recognized that policies were generic in form and it was

13  expressly documented that employees should use "discretionary judgment" for addressing

14  any variance or conflicts with the policies.

15       19.     Defendants admit paragraph 19 of Plaintiff's complaint.

16       20.     In response to paragraph 20 of Plaintiff's complaint, Defendants affirmatively

17  allege that Section 5.4 of the parties' 2011 employment agreement provides for termination

18  in the event of cause.

19       21.     In response to paragraph 21 of Plaintiff's complaint, Defendants affirmatively

20  allege that Section 5.4.1 defines the term "cause" and speaks for itself.

21       22.     In response to paragraph 22 of Plaintiff's complaint, Defendants affirmatively

22  allege that the parties' 2011 employment agreement contains a "governing law" section,

23  paragraph 13, which speaks for itself.

24       23.     Defendants deny paragraph 23 of Plaintiff's complaint.   Defendants

25  affirmatively allege that Plaintiff, consistent with its pattern and practice of bribing and

26  bestowing gifts on public officials, encouraged Defendant to make various "gifts" to such

27  officials.  For example and without limitation, *see* Exhibit "A" to this answer and

28                                                    4

1    counterclaim. Further, Defendant would frequently incur expenses for entertaining clients

2    and prospective clients. As far back as 2003, these expense reports would be express in

3    stating the names of cities, the names and titles of the officials and the type of expense

4    incurred. This would include stating that expenses were for "gifts, "golf games" and

5    "dinners." These expenses were incurred at the direction and approval of the Defendant's

6    superiors, including the CEO. (*See, e.g.,* Exhibit "B".)

7        24.    Defendants deny paragraph 24 of Plaintiff's complaint.

8        25.    Defendants deny paragraph 25 of Plaintiff's complaint.

9        26.    Defendants deny paragraph 26 of Plaintiff's complaint.

10       27.    In response to paragraph 27 of Plaintiff's complaint, Defendants admit that on

11   or about February 20, 2013 Plaintiff terminated Defendant's employment but deny that the

12   termination was the result of any misconduct on the part of Defendant.

13       28.    In response to paragraph 28 of Plaintiff's complaint, Defendants lack sufficient

14   information so as to admit or deny and, therefore, deny same.

15       29.    In response to paragraph 29 of Plaintiff's complaint, Defendants lack sufficient

16   information so as to admit or deny and, therefore, deny same.

17       30.    In response to paragraph 30 of Plaintiff's complaint, Defendants lack sufficient

18   information so as to admit or deny and, therefore, deny same.

19       31.    Defendants admit paragraph 31 of Plaintiff's complaint.

20       32.    Defendants admit paragraph 32 of Plaintiff's complaint.

21       33.    Defendants admit paragraph 33 of Plaintiff's complaint.

22       34.    Defendants deny paragraph 34 of Plaintiff's complaint.

23       35.    In response to paragraph 35 of Plaintiff's complaint, Defendants acknowledge

24   that Plaintiff is seeking a declaratory judgment but affirmatively allege that Plaintiff is

25   entitled to no such judgment.

26       36.    No responsive pleading is required in regard to paragraph 36 of Plaintiff's

27   complaint.

28                                              5

1    37.    Defendants deny paragraph 37 of Plaintiff's complaint.

2    38.    Defendants deny paragraph 38 of Plaintiff's complaint.

3    39.    Defendants deny paragraph 39 of Plaintiff's complaint.

4    40.    Defendants deny paragraph 40 of Plaintiff's complaint.

5    41.    Defendants deny paragraph 41 of Plaintiff's complaint.

6    42.    No responsive pleading is required in regard to paragraph 42 of Plaintiff's

7    complaint.

8    43.    In response to paragraph 43 of Plaintiff's complaint, Defendants affirmatively

9    allege that the parties' 2011 employment agreement supersedes all prior employment

10    agreements. Defendants further allege that, pursuant to paragraph 8 of that agreement,

11    Defendant agreed to abide by Plaintiff's policies and procedures as they are issued from time

12    to time.

13    44.    Defendants deny paragraph 44 of Plaintiff's complaint.

14    45.    Defendants deny paragraph 45 of Plaintiff's complaint.

15    46.    Defendants deny paragraph 46 of Plaintiff's complaint.

16    47.    No responsive pleading is required in regard to paragraph 47 of Plaintiff's

17    complaint.

18    48.    In response to paragraph 48 of Plaintiff's complaint, Defendants admit that

19    Arizona law recognizes that parties to a contract owe one another the duty of good faith and

20    fair dealing. Defendants affirmatively allege that, at no time, did Defendant, Aaron

21    Rosenberg, breach this duty.

22    49.    In response to paragraph 49 of Plaintiff's complaint, Defendants admit that

23    Arizona law recognizes that parties to a contract owe one another the duty of good faith and

24    fair dealing. Defendants affirmatively allege that, at no time, did Defendant, Aaron

25    Rosenberg, breach this duty.

26    50.    Defendants deny paragraph 50 of Plaintiff's complaint.

27    51.    Defendants deny paragraph 51 of Plaintiff's complaint.

28                                         6

52.   Defendants deny paragraph 52 of Plaintiff's complaint.

53.   No responsive pleading is required in regard to paragraph 53 of Plaintiff's complaint.

54.   In response to paragraphs 54 of Plaintiff's complaint, Defendants acknowledge that Plaintiff is seeking declaratory relief but affirmatively deny that Plaintiff is entitled to such relief.

55.   In response to paragraphs 55 of Plaintiff's complaint, Defendants acknowledge that Plaintiff is seeking declaratory relief but affirmatively deny that Plaintiff is entitled to such relief.

56.   In response to paragraphs 56 of Plaintiff's complaint, Defendants acknowledge that Plaintiff is seeking declaratory relief but affirmatively deny that Plaintiff is entitled to such relief.

57.   In response to paragraphs 57 of Plaintiff's complaint, Defendants acknowledge that Plaintiff is seeking declaratory relief but affirmatively deny that Plaintiff is entitled to such relief.

58.   No responsive pleading is required in regard to paragraph 58 of Plaintiff's complaint.

59.   Defendants deny each and every allegation set forth in Plaintiff's complaint not expressly admitted in this answer.

60.   Defendants allege the affirmative defenses of unclean hands, waiver and estoppel. So as to not waive any affirmative defenses, at this time, Defendants further allege all affirmative defenses set forth in Arizona Rule of Civil Procedure 8(c). Defendants will so assert additional affirmative defenses revealed during discovery in their disclosure statement pursuant to Arizona Rule of Civil Procedure 26.1.

WHEREFORE, with respect to Plaintiff's claims against Defendants, Defendants request that all such claims be dismissed, with prejudice, and that the Court award Defendants their costs, fees, and such other relief as the Court deems just and proper.

1  **COUNTERCLAIMS**

2  As and for their counterclaims against Counterdefendant, Counterclaimants, Aaron

3  M. Rosenberg and Lisa F. Rosenberg, complain and allege as follows:

4  **Count I - Defamation**

5  1.  Counterdefendant Redflex Traffic Systems, Inc. ("Redflex") has published

6  false and defamatory allegations concerning Counterclaimant, Aaron M. Rosenberg.

7  Counterdefendant has done so with malice and, as a result, in addition to damages in the

8  form of lost, past and future income and compensatory damages, Counterclaimants are

9  entitled to punitive damages against Counterdefendant, Redflex.

10  2.  Continuously during Counterclaimants Aaron Rosenberg's employment with

11  Counterdefendant, Counterdefendant instilled in Counterclaimant its practice of lavishly

12  providing customers, including governmental officials, with perquisites and gifts in various

13  forms.  This practice was the result of decisions made by Counterdefendant's President and

14  Chief Executive Officer as well as Counterdefendant's Board of Directors.  In complying

15  with the directives of these officials, Counterclaimant, Aaron Rosenberg, was simply

16  "carrying out orders."  At no time during his employment with Counterdefendant did

17  Counterclaimant, Aaron Rosenberg, engage in any conduct outside of the course and scope

18  of his employment as defined by Counterdefendant's President and Chief Executive Officer.

19  Nonetheless, beginning in approximately October 2012, Counterdefendant began to portray

20  Counterclaimant as a rogue employee in order to mislead the public and governmental

21  officials as to the full nature and extent of Counterdefendant's pattern and practice.

22  Counterdefendant falsely portrayed Counterclaimant as such in a widespread media

23  campaign, in many public and private meetings, and in various company reports,

24  intentionally and/or recklessly.  Counterdefendant's conduct in this regard was and is

25  extreme and outrageous.

26  3.  During  Counterclaimant's  employment  with  Counterdefendant,

27  Counterdefendant bestowed gifts and bribes on company officials in dozens of

28  8

1  municipalities within, but not limited to the following states: California, Washington,
2  Arizona, New Mexico, Texas, Colorado, Massachusetts, North Carolina, Florida, New
3  Jersey, Tennessee, Virginia, and Georgia.

4  　　　　4.　　　As previously set forth in Defendants' answer, at all times, Counterclaimant
5  Aaron Rosenberg's expense reports were approved by Counterdefendant, some of which
6  contained specific references to payments or other benefits to governmental officials within
7  the above-described states.  Indeed, Counterclaimant specifically, in his expense reports,
8  identified expenditures as "gifts" for city officials and was ordered to "proceed in a cautious
9  and appropriate manner in providing gifts and entertainment to city officials." (*See* Exhibit
10  "C" to this counterclaim, Counterdefendant's November 16, 2006 e-mail to Counterclaimant
11  reflecting Counterdefendant's Chief Executive Officer's "directive that (Counterclaimant)
12  proceed in a cautious and appropriate manner in providing gifts . . . to city officials
13  consistent with (Counterdefendant's) policy.")

14  　　　　5.　　　In October 2012, the Chicago Tribune reported that Counterdefendant, in
15  2010, had paid a hotel bill for a Chicago city official in the amount of $910.  Shortly after
16  this expense was incurred, Counterclaimant met with Counterdefendant's Chief Executive
17  Officer, Chief Financial Officer and General Counsel.   These individuals told
18  Counterclaimant to "take one for the team" and accept full blame for the expenditure.
19  Counterdefendant went on to describe how the company would fully reimburse
20  Counterclaimant, should he participate in this illegal scheme and reimbursement process, so
21  Counterclaimant would not be out of pocket any money.  Counterdefendant's conduct in this
22  regard was also extreme and outrageous.  Counterclaimant refused to participate in such a
23  scheme and process.

24  　　　　6.　　　On or about October 14, 2012, the Chicago Tribune reported receiving the
25  following information from Counterdefendant:

26  　　　　"Lawyers for Redflex Traffic Systems, Inc. said the firm disciplined the
27  　　　　Executive Vice President involved and sent him to anti-bribery training after

28  　　　　　　　　　　　　　　　　　　9

1   the incident, but did not report the violation. . . . Rosenberg was warned by
    Reflex' top executives that this was a potential conflict of interest issue and a
2   violation of Company policy and a follow-up event would result in his
    termination."

3

4   7.     In a further effort to impugn Counterclaimant's character and make him the

5   scapegoat of Counterdefendant's practice of providing gifts and bribes to company officials,

6   on October 17, 2012, the Chicago Tribune quoted Counterdefendant, once again, stating:

7       "In an interview last week, Redflex' General Counsel Andrejs Bunske told the
        newspaper its exhaustive probe of the expense reports found only one
8       improper expenditure for bills and, as a result, the Company overhauled its
        expense reporting policies and sent the Executive Vice President
9       (Counterclaimant) involved to anti-bribery training."

10  8.     Contrary to Counterdefendant's false and defamatory communications,

11  Counterclaimant was never put through "anti-bribery" training. Counterclaimant was never

12  reprimanded and only received exemplary annual performance reviews during this period.

13  Counterdefendant's above-described lies concerning Counterclaimant were communicated

14  by Counterdefendant's General Counsel to the Chicago Tribune in order to preserve

15  Counterdefendant's contracts and deter the Chicago Tribune from conducting further

16  investigation which would reveal Counterdefendant's practice of providing lavish gifts to

17  and bribing government officials. In November 2012, Counterdefendant held its first ever

18  "foreign corrupt practices act" training.    The day after receiving this training,

19  Counterclaimant contacted Counterdefendant's General Counsel to discuss information

20  about which he was familiar which established that Counterdefendant's policy and practice

21  of providing gifts to government officials was improper.    During this meeting,

22  Counterclaimant thoroughly informed Counterdefendant's General Counsel of the nature of

23  the practice. Following this disclosure, Counterclaimant cooperated with a subsequent

24  internal investigation by the law firm of Sidley Austin into the policy and practice.

25  Counterclaimant has provided similar information to law enforcement at both the state and

26  federal level. Counterdefendant's current CEO developed and widely communicated a

27  policy that "encourages" whistleblowing behaviors. As outlined above, Counterclaimant was

28                                            10

1    the first employee to adhere to this new policy for reporting unethical behaviors. This
2    included providing disclosures about various Redflex executives and various Redflex
3    business practices promoted and directed by the CEO which would be considered bribes and
4    gratuities. These disclosures were maliciously used by the Counterdefendant against the
5    Counterclaimant in its effort to discredit and destroy the Counterclaimant's reputation.

6         9.    On February 20, 2013, Counterdefendant terminated Counterclaimant's
7    employment. Shortly after doing so, Counterdefendant sued Counterclaimant and issued
8    press releases which continued to disseminate false and defamatory information concerning
9    Counterclaimant including, without limitation, the baseless allegation that Counterclaimant
10   had engaged in "dishonest and unethical conduct over a number of years" and had engaged
11   in a "protracted and covert scheme to misappropriate company funds over a period of years."

12        10.   As a result of Counterclaimant's disclosures as well as the Sidley Austin
13   investigation, Counterdefendant knows, full well and without question, that Counterclaimant
14   was simply "carrying out his orders" in connection with gifts and payments to governmental
15   officials. Nonetheless, Counterdefendant continues to publish false and defamatory
16   information concerning Counterclaimant in public records including the website of its parent
17   company, Redflex Holdings.

18        11.   As a direct and proximate result of the above-described false and defamatory
19   communications concerning Counterclaimant by Counterdefendant, Counterclaimant's
20   reputation and his ability to earn income has been ruined. Counterclaimant has experienced
21   income loss, compensatory damages and, as previously alleged, is entitled to recover
22   punitive damages.

23        WHEREFORE, Counterclaimants pray for relief as follows:

24        a.    For damages against Counterdefendant for defamation in the form of lost past
25              and future income, compensatory damages and punitive damages; and

26        b.    For such further relief as the Court deems just and proper.

27

28                                        11

**Count II – Intentional Infliction of Emotional Distress**

12.   Counterclaimant incorporates paragraphs 1-11 of its Counterclaim, as set forth above, for this paragraph 12 of its Counterclaim, as if fully set forth herein.

13.   The actions of Counterdefendant, as described above, constitute extreme and outrageous conduct that is and was likely to inflict severe emotional distress on Counterclaimants.

14.   As a direct and proximate result of Counterdefendant's extreme and outrageous conduct, Counterclaimants have experienced severe emotional distress.

15.   As a direct and proximate result of Counterdefendant's intentional infliction of emotional distress upon Counterclaimants, Counterclaimants are entitled to recover compensatory and punitive damages.

16.   Counterdefendants identified as Does, XYZ Corporations and Black Partnerships are named fictitiously.   In the event that Counterclaimants discover the identities of additional parties liable to them, Counterclaimants will amend this complaint and substitute those parties for those parties fictitiously named.

WHEREFORE, Counterclaimants pray for relief as follows:

a.   For damages against Counterdefendant for its intentional infliction of emotional distress on Counterclaimants in the form of compensatory damages and punitive damages; and

b.   For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 11 day of October, 2013.

MILLIGAN LAWLESS, P.C.

James Burr Shields
Attorneys for Defendants/Counterclaimants

* * *

12

1   COPY of the foregoing mailed
    this 11th day of October, 2013 to:

2   Daniel P. Quigley
    Betsy J. Lamm
3   Cohen Kennedy Dowd & Quigley
    2425 East Camelback Road #1100
4   Phoenix, AZ 85016
    dquigley@ckdqlaw.com
5   blamm@ckdqlaw.com
    Attorneys for Plaintiff

6

7

8   _____

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    13

**EXHIBIT "A"**

**EXHIBIT "B"**

**Aaron Rosenberg**

From:       Karen Finley
Sent:       Wednesday, June 18, 2008 11:00 AM
To:         Joanne Kuhl
Cc:         Aaron Rosenberg
Subject:    Re: April - May Expense Report

It is approved and I apologize as Mike Browne said he was dealing with this as there was some
accounting confusion. Please process and the procedure can be dealt with when I am back in
the office Thursday afternoon

Sorry for the confusion and we gave him the 5k for political support. It was not an employee
loan or advance.

Karen
Sent via BlackBerry

-----Original Message-----
From: Joanne Kuhl <jkuhl@redflex.com>
To: Karen Finley <kfinley@redflex.com>
Sent: Wed Jun 18 10:58:17 2008
Subject: FW: April - May Expense Report

This was the report that I sent you with the $5000 question

-----Original Message-----
From: Karen Finley
Sent: Thursday, May 29, 2008 12:38 PM
To: Joanne Kuhl
Subject: RE: April - May Expense Report

Let me get back to you on that.

Karen


Karen Finley
President and CEO
Redflex Traffic Systems, Inc.
15020 N 74th Street
Scottsdale, AZ 85260
Tel: 480.998.4442
Fax: 480.607.5552
email: kfinley@redflex.com

-----Original Message-----
From: Joanne Kuhl
Sent: Thursday, May 29, 2008 11:14 AM
To: Karen Finley
Subject: FW: April - May Expense Report

1

Karen,

Aaron's latest expense report is attached. The advance he got was added on and then subtracted. Is it supposed to be subtracted?

Joanne


-----Original Message-----
From: Aaron Rosenberg
Sent: Tuesday, May 27, 2008 1:33 PM
To: Joanne Kuhl
Subject: April - May Expense Report

Hard cpy and receipts to follow in mail.

Thank you,
Aaron

----------------------------------
Aaron M. Rosenberg, PhD
Vice President
Redflex Traffic Systems Inc
+1 310 743-1209
arosenberg@redflex.com

2

  

**CampaignMoney** .com

Enter a Zip Co [GO] **See $$$ Contributors From Your Zip Code**          $8,777,055,105 in Contributions for 2013

Home          |     Money Search     |     Top 25 Candidates          |          About          Data Updated on 1/21/2013

**Business4Better**

www.Business4Better.org

Bringing Businesses and Nonprofits Together May 1-2, 2013 Anaheim, CA

AdChoices ▷

## Aaron Rosenberg
## Political Campaign Contributions
## 2008 Election Cycle



| More |
|---|
| **Contribution Totals** |

[ Download Data ]

Download all contribution records for this person from 1999 to present
*To a Spreadsheet or Other File Type*

| 2012 Transaction Count/Amount | 4/43,750 |
| 2010 Transaction Count/Amount | 1/1,250 |
| 2008 Transaction Count/Amount | 2/16,000 |
| 2006 Transaction Count/Amount | 0/$0 |
| 2004 Transaction Count/Amount | 0/$0 |
| 2002 Transaction Count/Amount | 0/$0 |
| 2000 Transaction Count/Amount | 0/$0 |

[ Download Data ]

Download all contribution records for this person from 1999 to present
*To a Spreadsheet or Other File Type*

### Obama Refi Assistance

Government.BestRateRefinance.org

Gov. Refi Available. Get Quotes! No SSN, No Credit Check. Start Now.



AdChoices ▷

**Search**

Contributors:
Individual's Name
Employer
Occupation
City
County
Zip Code
State
Candidates:
Name
Party
State
Committees (PACs):
Name
Category
"527" Organizations:
Organizations
Contributors by Name
Contributors by Zip
Lobbyists:
Name
Client

**Directories**

Top $$$ Contributors
Contributions by Zip
Candidates by State
Committees (PACs)
527 Organizations

**Reports**

Celebrity Contributors:
Aaron Sorkin
Andrew Fastow
Arnold Palmer
Arnold Schwarzenegger
Ben Affleck
Bill Cosby
Bill Gates
Calvin Klein
Dennis Kozlowski
Donald Trump
George Soros
Hugh Hefner
Jack Grubman
Jeff Skilling
John Grisham
John Rigas
Ken Lay
Martha Stewart

### Aaron Rosenberg Contribution List in 2008

| Name & Location | Employer/Occupation | Dollar Amount | Date | Primary/General | Contributed To |
|---|---|---|---|---|---|
| Rosenberg, Aaron MANHATTAN BEACH, CA 90266 | Redflex Traffic Systems/Executive V | $5,000 | 07/30/2008 | P | ARIZONA STATE DEMOCRATIC CENTRAL EXECUTIVE COMMITTEE - *Democrat* |
| Rosenberg, Aaron Mr. MANHATTAN BEACH, CA 90266 | | $1,000 | 06/20/2007 | P | NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE - *Republican* |

Aaron Rosenberg - $6,000 in Political Contributions for 2008                                    Page 2 of 3

Hei Gibson
Oprah Winfrey
Ralph Lauren
Donald Trump
Richard Scrushy
Rush Limbaugh
Sam Waksal
Scott Sullivan
Steven Spielberg
Tom Cruise
Tommy Hilfiger
Industry Contributors:
    CEO/Chief Executives
    College Professors
    Journalists/Reporters
    Trial Lawyers
    Golf Professionals
    Poker Professionals
    Mortgage Brokers
    Futures Brokers
    Stock Brokers
    Options Brokers
    Life Insurance
    Health Insurance
    Auto Insurance
    Securities Lawyers
    Mortgages
    Banks
    Boats & Yachts
    Commercial Loans
    Tax Exempt Companies
    Defense Contracts
    GSA Contracts
    Executive Compensation
    Aircraft
Baseball Contributors:
    New York Yankees
    Boston Red Sox
    Chicago Cubs
Notable Politicians:
    Barack Obama
    George W Bush
    John Kerry
    Ralph Nader
    Hillary Clinton
Companies:
    Microsoft
    CNN
    Apple Computer
    New York Times
    News Corporation
    Nike
    Halliburton
    General Electric
    Exxon Mobil
    Ford Motor
    Anheuser Busch
Top 10 Contributors:
    Linda Mcmahon
    Bob Perry
    John Raese
    Edward Lamont
    Haim Saban
    James Pederson
    Stephen Bing
    Fred Eychaner

Case 2:14-cv-03420-GW-RZ   Document 5   Filed 05/02/14   Page 40 of 78   Page ID #:116

Aaron Rosenberg - $6,000 in Political Contributions for 2008

Jared Polis
Richard Tarrant



Copyright ©2013 CampaignMoney.com All rights reserved. disclaimer

**EXHIBIT "C"**

## Aaron Rosenberg

| | |
|---|---|
| **From:** | Cherif Elsadek |
| **Sent:** | Thursday, November 16, 2006 7:48 PM |
| **To:** | Aaron Rosenberg |
| **Cc:** | Justin Iske |
| **Subject:** | RE: Gifts and Entertainment |

Aaron,

The expense in question (Morton's) was incurred during the "Florida League of Cities" conference held in Jacksonville this past August 9th. Under the suggestion of Governance it was thought a good decision to invite approximately 30 councilman and their spouses (15-19 council members and guest to be exact) to Morton's Steak house where we could pitch Redflex and RLC to them.
The guest list contained council members from the following Florida cities

*Cherif,*
*Below I have listed the Cities that Redflex is actively targeting in some*
*form or fashion. We should invite a representative from each of these*
*Cities to our dinner Thursday night August 10th during the Florida League of*
*Cities conference. Can you think of any other cities you would like to*
*invite? Scott and I will put our heads together to determine if there are*
*additional individuals who would be beneficial to include.*

*St Petersburg*
*Jacksonville*
*Lakeland*
*Delray Beach*
*Orlando*
*Lynn haven*
*Parkland*
*Pembroke Pines*
*Daytona*
*Parkland*
*City of Miami*
*Vero Beach*
*Broward County*
*West Park*
*Tallahassee*

*Thanks,*
*Paige*
*Governance, Inc.*
*850)222-6050*

The dinner at Morton's served as an opportunity to solidify relationships between Redflex and the above listed cities where Peter and I had the chance to talk one on one with each guest. Put in perspective it would have cost RTS more than the dinner expense to go and meet the various council members individually and more than likely we would not have established contact with council on the first visit. To have had such a gathering of key personnel in a relaxed atmosphere served to break down key resistance and the presence of Scott Maddox interjected a further and higher degree of credibility towards RTS. As a direct post result of the function we were able to:

- Meet and present to City of Miami Mayor, Police, engineering and Chief of Staff
- Meet with and present to City of West Park Administrator and Chief of Police
- Schedule presentation to City of West Park council members on 12/6
- Held meeting with Jacksonville police and engineering which resulted in the request of a proposal. Proposal submitted and is being reviewed.
- Breakfast meeting set with Jacksonville Sheriff, Engineering and County administrator for 12/8
- Set a 2nd meeting with City of Miami Staff for 12/6 to lay out steps and time line for safety program implementation.

1

- Secure several one on one meetings with Pembroke Pines Police Chief.

I applaud and commend Justin's efforts and eagle eye to assure we all operate within the guidelines of proper and responsible policy adherence. In the future such functions will be discussed and pre-approved prior to forward movement.


-----Original Message-----
From: Aaron Rosenberg
Sent: Thursday, November 16, 2006 8:24 PM
To: Cherif Elsadek
Subject: Fw: Gifts and Entertainment

Please provide me a full list of participants, the date and greater detail regarding this expense. In addition to participants, I need to know why and how this was scheduled, as this type of egregious expense needs to be discussed in advanced.

Per Justin's comments, this size of expense may push the limit of "gifts" and need to be claimed for audit, legal and ethical reasons.

Thank you for your understanding.
Aaron
-----------------------------
Sent using BlackBerry


-----Original Message-----
From: Justin Iske <jiske@redflex.com>
To: Aaron Rosenberg <arosenberg@redflex.com>
CC: Richard Eden <reden@redflex.com>
Sent: Thu Nov 16 18:09:15 2006
Subject: Gifts and Entertainment


Aaron,


I continue to see several expenses per month that would fall under the guidelines of our corporate gift policy.


The example in front of me at the moment is an expense from Cherif. As I have no receipts for the dinner nor your approval, I don't have much information to go off of, but the expense claim states, "Morton's, various councilmen" with "Special event dinner for council members in FL" penciled next to it. The amount of the dinner was $3,235.74.


Given Karen's directive that we proceed in a cautious and appropriate manner in providing gifts and entertainment to city officials consistent with our policy, I felt obligated to ask whether Cherif was sure that none of the cities involved in this event had any policies or guidelines prohibiting such an expensive dinner.


Obviously it is certainly not my job to police the administration of the policy, but when I see a good example such as this I feel it is a good opportunity to reinforce the policy.


Thanks,

# EXHIBIT C



1   James Burr Shields, Esq.
    Arizona Bar No. 011711
2   Burr@MilliganLawless.com
    Emily D. Armstrong, Esq.
3   Arizona Bar No. 030082
    Emily@milliganlawless.com
4   MILLIGAN LAWLESS, P.C.
    5050 North 40th Street, Suite 200
5   Phoenix, Arizona 85018
    Telephone: (602) 792-3500
6   *Attorneys for Defendants*

7

8                **IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

9                     **IN AND FOR THE COUNTY OF MARICOPA**

10  REDFLEX TRAFFIC SYSTEMS,          No.  CV2013-001166
    INC., a Delaware corporation
11
                Plaintiff,            **MOTION FOR LEAVE TO FILE
12                                    AMENDED COUNTERCLAIM**

13  v.

14  AARON M. ROSENBERG and LISA       (Assigned to the Hon. Douglas Rayes)
    F. ROSENBERG, husband and wife,
15
                Defendants.
16
    ───────────────────────────────
17  AARON M ROSENBERG and LISA
    F. ROSENBERG, husband and wife,
18
                Counterclaimants,
19
    v.
20
    REDFLEX TRAFFIC SYSTEMS,
21  INC., a Delaware corporation; DOES
    I-X; BLACK PARTERNERSHIPS I-
22  X; and XYZ CORPORATIONS I-X,

23              Counterdefendants.

24                          **INTRODUCTION**

25        On February 25, 2014, this Court found the Rosenbergs had not adequately pled the

26  emotional distress element of their Intentional Infliction of Emotional Distress ("IIED")

27  claim, "but that such deficiency could be cured."  Accordingly, the Court ordered "that Mr.

28  Rosenberg may seek leave to file an amended counterclaim to more specifically plead the

*Milligan Lawless, P.C.*
*5050 North 40th Street, Suite 200*
*Phoenix, Arizona 85018*

1  nature of his emotional distress." See order attached as Exhibit A.

2        Pursuant to this Court's Order and Arizona Rule of Civil Procedure 15,
3  Counterclaimant Aaron Rosenberg hereby moves for leave to amend his IIED claim as
4  follows.

5  **BACKGROUND**

6  **I.  Redflex's Extreme and Outrageous Conduct.**

7        Redflex provides traffic law enforcement services and technology to various cities,
8  states, counties, and municipalities ("governments") across the country in exchange for
9  payment. Redflex executives overtly entertained, wined and dined, and spoiled key
10 officials in such governments in order to secure lucrative contracts for Redflex with those
11 governments. Redflex often utilized Mr. Rosenberg as its mouthpiece to carry out its
12 objectives in this regard. For the most part, Mr. Rosenberg carried out such directives. At
13 the time, Redflex praised Mr. Rosenberg for this conduct and for his success in securing
14 many government contracts.

15       In many instances, Redflex's above-mentioned conduct was highly unethical or even
16 illegal. In 2012, the Chicago Tribune revealed that Redflex had paid a hotel bill for a key
17 city official. In an attempt to save face from the negative press, Redflex asked Mr.
18 Rosenberg to take the blame for the hotel bill. Mr. Rosenberg refused to do so.

19       To deflect the negative press and appear ethical to shareholders, Redflex conducted
20 an internal audit of the company's entertainment practices. Mr. Rosenberg participated in
21 the audit. The audit was actually used, in part, in an effort to gain evidence to terminate
22 Mr. Rosenberg, the planned fall guy for Redflex's misdeeds.

23       After the audit, Redflex intentionally and maliciously began a public smear
24 campaign in the press against Mr. Rosenberg, painting him as a rogue employee, who acted
25 without corporate backing when he entertained key government officials. When Redflex
26 made such statements to the press, shareholders, and others, it knew such statements were
27 false and defamatory. Redflex also publicly and wrongfully terminated Mr. Rosenberg,
28 claiming it was cleaning house and purging the officials associated with the old Redflex

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

2

1   way.   Again, this is not true as Redflex's entertainment culture was institutionalized in
2   nature and Redflex retained many of the executives, board members, and employees who
3   promoted same.  Redflex also purposefully grossly understated the scope of its misconduct.
4         The Rosenbergs filed a claim for IIED against Redflex, based, in part, on the above-
5   referenced conduct.  This Court found such conduct sufficiently extreme and outrageous
6   for purposes of an IIED claim.

7   **II. Mr. Rosenberg's Emotional Distress**

8         This Court found that Mr. Rosenberg needed to file an amended pleading, alleging
9   his emotional distress in more detail.  A red-lined copy of the proposed amended pleading
10  is attached as Exhibit B.   In the amended counterclaim, Mr. Rosenberg alleges that
11  Redflex's conduct has made him nauseous, sick, depressed, sad, and irritable.  Redflex's
12  conduct has caused Mr. Rosenberg to seek counsel in a psychologist and others.  Redflex's
13  conduct has also caused Mr. Rosenberg energy loss, sleep loss, guilt, and weight changes.
14  It has also often times prevented him from enjoying everyday activities, and left him
15  feeling sad and isolated, straining his ability to maintain healthy relationships with others.
16  Redflex's conduct has also brought public shame to Mr. Rosenberg and his family, and has
17  had dire financial consequences for the Rosenbergs.  This is alleged in more detail in the
18  attached proposed counterclaim.

19              **LEGAL STANDARD**

20        Under Arizona Rule of Civil Procedure 15(a), leave to amend a party's pleading
21  "shall be freely given when justice requires."  Ariz. R. Civ. P. 15(a).  Amendments are to
22  be "liberally allowed; trial on the merits of the claim is favored."  *Owen v. Superior Court*,
23  133 Ariz. 75, 79 (1982).

24                **ARGUMENT**

25        This Court should grant Mr. Rosenberg's request for leave to amend for multiple
26  reasons.  First, this Court found that Mr. Rosenberg could "seek leave to file an amended
27  counterclaim to more specifically plead the nature of his emotional distress."  Accordingly,
28  this Court has already determined that the proposed amended pleading is proper.

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

3

1    Second, the proposed amendment will further the interests of justice and any
2    deficiencies in the Rosenbergs' original pleading have been cured.  As stated above, Mr.
3    Rosenberg amended his counterclaim to allege that Redflex's conduct has made him
4    nauseous, sick, depressed, and irritable.  It has caused him to seek counsel in a
5    psychologist and others, and has caused Mr. Rosenberg energy loss, sleep loss, guilt, and
6    weight changes.  Such conduct is sufficient to allege the emotional distress necessary for
7    an IIED claim.

8    Third, there has been no delay or bad faith in filing the IIED claim, and no prejudice
9    to Redflex would result from allowing same.  Rather, Mr. Rosenberg pled his IIED claim
10   and theory in his original counterclaim, making Redflex well aware of his position.
11   Redflex has also already issued discovery requests specific to this claim.  Thus, no
12   prejudice or harm will result to Redflex by allowing the proposed amendment.

## CONCLUSION

14   Arizona's standard for allowing amendments is very liberal.  Because of this and the
15   foregoing, Mr. Rosenberg respectfully requests that this honorable Court grant him leave to
16   file his amended Counterclaim, attached as Exhibit B.

17       DATED this 1st day of April, 2014.

18                                   MILLIGAN LAWLESS, P.C.

19

20                                   /s/ James Burr Shields
21                                   James Burr Shields
                                     Emily D. Armstrong
22                                   Attorneys for Defendants

23   Filed with azTurboCourt and
     MAILED April 1, 2014 to:

24   Daniel P. Quigley
     Betsey Lamm
25   COHEN KENNEDY DOWD & QUIGLEY
     2425 E. Camelback Rd., Suite 1100
26   Phoenix, AZ 85016
     dquigley@ckdqlaw.com
27   blamm@ckdqlaw.com
     Attorneys for Plaintiff

28

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

4

1  /s/ Nicole Griesbach

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

# EXHIBIT A

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
03/03/2014 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-001166                                              02/25/2014


JUDGE DOUGLAS L. RAYES                       CLERK OF THE COURT
                                                  T. Springston
                                                     Deputy


REDFLEX TRAFFIC SYSTEMS INC          DANIEL P QUIGLEY

v.

AARON M ROSENBERG, et al.            JAMES BURR SHIELDS II



                                     DOCKET-CIVIL-CCC



### UNDER ADVISEMENT RULING

    Redflex Traffic Systems, Inc.'s ("Redflex") Motion to Dismiss Count II of Defendants'
Counterclaim (Intentional Infliction of Emotional Distress) was taken under advisement
following the oral argument of February 3, 2014. The Court has considered Redflex Traffic
System, Inc.'s Motion to Dismiss; Defendants/Counterclaimants' ("Rosenbergs") Response;
Redflex's Reply; and the arguments of counsel.

    Redflex argues that the Counterclaim is inadequate and fails to state a claim for
intentional infliction of emotional distress because it fails to allege the requisite severe emotional
distress and because it does not allege extreme and outrageous conduct.

    The Court finds that the allegations of the Counterclaim do not sufficiently allege
emotional distress, but that such deficiency can be cured.

    The more difficult question is whether the Counterclaim alleges conduct that is
sufficiently extreme and outrageous to state a claim for intentional infliction of emotional
distress. The Court is responsible to make the initial determination as to whether the alleged
conduct is extreme and outrageous. The Court must determine whether reasonable minds could
differ about whether the conduct is sufficiently outrageous; was Defendants' conduct so
outrageous "to go beyond all possible bounds of decency and to be regarded as atrocious and

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-001166                                    02/25/2014

utterly intolerable in a civilized community." *Johnson v McDonald*, 197 Ariz. 155, 160, 3 P.3d 1075, 1080 (App. 1979).

The Counterclaim alleges that Redflex, in an effort to retaliate against Mr. Rosenberg for revealing a company policy of bribing customers, made him the scapegoat in press releases. The Counterclaim alleges that Redflex portrayed Mr. Rosenberg as "a rogue employee" to scape goat him for Redflex's inappropriate activity of bribing customers in press releases and internal reports.

Assuming the truth of the allegations of the Counterclaim, as the Court must, the Court finds reasonable minds could differ about whether the conduct alleged in the Counterclaim is sufficiently outrageous to state a claim for intentional infliction of emotional distress.

**IT IS ORDERED** granting Redflex's Motion to Dismiss Count II of Defendants' Counterclaim as to the sufficiency of the allegations of the emotional distress suffered by Mr. Rosenberg.

**IT IS FURTHER ORDERED** that Mr. Rosenberg may seek leave to file an amended counterclaim to more specifically plead the nature of his emotional distress.

**IT IS FURTHER ORDERED** denying Redflex's Motion to Dismiss regarding the sufficiency of the allegations of extreme and outrageous conduct.

**IT IS FURTHER ORDERED** granting Redflex's Motion to Dismiss as to Mrs. Rosenberg.

Effective April 15, 2014 new civil rules and forms are in effect for managing cases moving to trial. Be sure to review the new Civil Rules 16, 26, 37, 38, 72 through 74 and 77.

ALERT: The Arizona Supreme Court Administrative Order 2011-140 directs the Clerk's Office not to accept paper filings from attorneys in civil cases. Civil cases must still be initiated on paper; however, subsequent documents must be eFiled through AZTurboCourt unless an exception defined in the Administrative Order applies.

# EXHIBIT B

1   James Burr Shields, Esq.
     Arizona Bar No. 011711
2   Burr@MilliganLawless.com
     Emily D. Armstrong, Esq.
3   Arizona Bar No. 030082
     Emily@milliganlawless.com
4   MILLIGAN LAWLESS, P.C.
     5050 North 40th Street, Suite 200
5   Phoenix, Arizona 85018
     Telephone:  (602) 792-3500
6   *Attorneys for Defendants*

*(side text, left margin:)* Milligan Lawless, P.C.  5050 North 40th Street, Suite 200  Phoenix, Arizona 85018

**IN THE SUPERIOR COURT OF THE STATE OF ARIZONA**

**IN AND FOR THE COUNTY OF MARICOPA**

| | |
|---|---|
| REDFLEX TRAFFIC SYSTEMS, INC., a Delaware corporation<br><br>    Plaintiff,<br><br>v.<br><br>AARON M. ROSENBERG and LISA F. ROSENBERG, husband and wife,<br><br>    Defendants.<br>_____<br>AARON M ROSENBERG and LISA F. ROSENBERG, husband and wife,<br><br>    Counterclaimants,<br><br>v.<br><br>REDFLEX TRAFFIC SYSTEMS, INC., a Delaware corporation; DOES I-X; BLACK PARTERNERSHIPS I-X; and XYZ CORPORATIONS I-X,<br><br>    Counterdefendants. | No.  CV2013-001166<br><br>**AMENDED** COUNTERCLAIM<br><br>(Assigned to the Hon. Douglas Rayes) |

**COUNTERCLAIMS**

As and for their amended counterclaims against Counterdefendant, Counterclaimants, Aaron M. Rosenberg and Lisa F. Rosenberg, complain and allege as follows:

**Count I – Defamation**

1.       Counterdefendant Redflex Traffic Systems, Inc. ("Redflex") has published false and defamatory allegations concerning Counterclaimant, Aaron M. Rosenberg. Counterdefendant has done so with malice and, as a result, in addition to damages in the form of lost, past and future income and compensatory damages, Counterclaimants are entitled to punitive damages against Counterdefendant, Redflex.

2.       Continuously during Counterclaimants Aaron Rosenberg's employment with Counterdefendant, Counterdefendant instilled in Counterclaimant its practice of lavishly providing customers, including governmental officials, with perquisites and gifts in various forms.   This practice was the result of decisions made by Counterdefendant's President and Chief Executive Officer as well as Counterdefendant's Board of Directors. In complying with the directives of these officials, Counterclaimant, Aaron Rosenberg, was simply "carrying out orders."   At no time during his employment with Counterdefendant did Counterclaimant, Aaron Rosenberg, engage in any conduct outside of the course and scope of his employment as defined by Counterdefendant's President and Chief Executive Officer.  Nonetheless, beginning in approximately October 2012, Counterdefendant began to portray Counterclaimant as a rogue employee in order to mislead the public and governmental officials as to the full nature and extent of Counterdefendant's   pattern   and   practice.       Counterdefendant   falsely   portrayed Counterclaimant as such in a widespread media campaign, in many public and private meetings,   and   in   various   company   reports,   intentionally   and/or   recklessly. Counterdefendant's conduct in this regard was and is extreme and outrageous.

3.       During   Counterclaimant's   employment   with   Counterdefendant, Counterdefendant bestowed gifts and bribes on company officials in dozens of municipalities within, but not limited to the following states: California, Washington, Arizona, New Mexico, Texas, Colorado, Massachusetts, North Carolina, Florida, New Jersey, Tennessee, Virginia, and Georgia.

4.       As previously set forth in Defendants' answer, at all times, Counterclaimant

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

2

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

1  Aaron Rosenberg's expense reports were approved by Counterdefendant, some of which
2  contained specific references to payments or other benefits to governmental officials
3  within the above-described states. Indeed, Counterclaimant specifically, in his expense
4  reports, identified expenditures as "gifts" for city officials and was ordered to "proceed in
5  a cautious and appropriate manner in providing gifts and entertainment to city officials."
6  (*See* Exhibit "C" to this counterclaim, Counterdefendant's November 16, 2006 e-mail to
7  Counterclaimant reflecting Counterdefendant's Chief Executive Officer's "directive that
8  (Counterclaimant) proceed in a cautious and appropriate manner in providing gifts . . . to
9  city officials consistent with (Counterdefendant's) policy.")

10      5.      In October 2012, the Chicago Tribune reported that Counterdefendant, in
11  2010, had paid a hotel bill for a Chicago city official in the amount of $910. Shortly after
12  this expense was incurred, Counterclaimant met with Counterdefendant's Chief Executive
13  Officer, Chief Financial Officer and General Counsel. These individuals told
14  Counterclaimant to "take one for the team" and accept full blame for the expenditure.
15  Counterdefendant went on to describe how the company would fully reimburse
16  Counterclaimant, should he participate in this illegal scheme and reimbursement process,
17  so Counterclaimant would not be out of pocket any money. Counterdefendant's conduct
18  in this regard was also extreme and outrageous. Counterclaimant refused to participate in
19  such a scheme and process.

20      6.      On or about October 14, 2012, the Chicago Tribune reported receiving the
21  following information from Counterdefendant:

22
23          "Lawyers for Redflex Traffic Systems, Inc. said the firm disciplined the
            Executive Vice President involved and sent him to anti-bribery training after
            the incident, but did not report the violation. . . . Rosenberg was warned by
24          Reflex' top executives that this was a potential conflict of interest issue and a
            violation of Company policy and a follow-up event would result in his
25          termination."

26      7.      In a further effort to impugn Counterclaimant's character and make him the
27  scapegoat of Counterdefendant's practice of providing gifts and bribes to company
28

1    officials, on October 17, 2012, the Chicago Tribune quoted Counterdefendant, once again,

2    stating:

3        "In an interview last week, Redflex' General Counsel Andrejs Bunske told
         the newspaper its exhaustive probe of the expense reports found only one
4        improper expenditure for bills and, as a result, the Company overhauled its
         expense reporting policies and sent the Executive Vice President
5        (Counterclaimant) involved to anti-bribery training."

6
         8.     Contrary to Counterdefendant's false and defamatory communications,
7
     Counterclaimant was never put through "anti-bribery" training. Counterclaimant was never
8
     reprimanded and only received exemplary annual performance reviews during this period.
9
     Counterdefendant's above-described lies concerning Counterclaimant were communicated
10
     by Counterdefendant's General Counsel to the Chicago Tribune in order to preserve
11
     Counterdefendant's contracts and deter the Chicago Tribune from conducting further
12
     investigation which would reveal Counterdefendant's practice of providing lavish gifts to
13
     and bribing government officials.  In November 2012, Counterdefendant held its first ever
14
     "foreign corrupt practices act" training.    The day after receiving this training,
15
     Counterclaimant contacted Counterdefendant's General Counsel to discuss information
16
     about which he was familiar which established that Counterdefendant's policy and practice
17
     of providing gifts to government officials was improper.    During this meeting,
18
     Counterclaimant thoroughly informed Counterdefendant's General Counsel of the nature
19
     of the practice.  Following this disclosure, Counterclaimant cooperated with a subsequent
20
     internal investigation by the law firm of Sidley Austin into the policy and practice.
21
     Counterclaimant has provided similar information to law enforcement at both the state and
22
     federal level.  Counterdefendant's current CEO developed and widely communicated a
23
     policy that "encourages" whistleblowing behaviors. As outlined above, Counterclaimant
24
     was the first employee to adhere to this new policy for reporting unethical behaviors.  This
25
     included providing disclosures about various Redflex executives and various Redflex
26
     business practices promoted and directed by the CEO which would be considered bribes
27
     and gratuities. These disclosures were maliciously used by the Counterdefendant against
28

Milligan Lawless, P.C.
5050 North 40ᵗʰ Street, Suite 200
Phoenix, Arizona 85018

4

1   the Counterclaimant in its effort to discredit and destroy the Counterclaimant's reputation.

2         9.     On February 20, 2013, Counterdefendant terminated Counterclaimant's

3   employment.   Shortly after doing so, Counterdefendant sued Counterclaimant and

4   Counterdefendant's parent company, Redflex Holdings, issued a press release which

5   continued to disseminate false and defamatory information concerning Counterclaimant

6   including, without limitation, the baseless allegation that Counterclaimant had engaged in

7   "dishonest and unethical conduct over a number of years" and had engaged in a

8   "protracted and covert scheme to misappropriate company funds over a period of years."

9        10.    As a result of Counterclaimant's disclosures as well as the Sidley Austin

10  investigation, Counterdefendant knows, full well and without question, that

11  Counterclaimant was simply "carrying out his orders" in connection with gifts and

12  payments to governmental officials. Nonetheless, Counterdefendant continues to publish

13  false and defamatory information concerning Counterclaimant in public records including

14  the website of its parent company, Redflex Holdings.

15       11.    As a direct and proximate result of the above-described false and defamatory

16  communications concerning Counterclaimant by Counterdefendant, Counterclaimant's

17  reputation and his ability to earn income has been ruined.   Counterclaimant has

18  experienced income loss, compensatory damages and, as previously alleged, is entitled to

19  recover punitive damages.

20       WHEREFORE, Counterclaimants pray for relief as follows:

21      a.     For damages against Counterdefendant for defamation in the form of lost

22             past and future income, compensatory damages and punitive damages; and

23      b.     For such further relief as the Court deems just and proper.

24      **Count II – Intentional Infliction of Emotional Distress (Aaron Rosenberg)**

25       12.    Counterclaimant Aaron Rosenberg incorporates paragraphs 1-11 of the

26  Rosenbergs' Counterclaim, as set forth above, for this paragraph 12 of his Counterclaim, as if

27  fully set forth herein.

28       13.    Counterdefendant's conduct, as described above, was intentional and nearly

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

1  destroyed Mr. Rosenberg's career and his personal life, all just to salvage the company bottom

2  line.  While Mr. Rosenberg is slowly now returning to a more normal life as time passes,

3  Redflex's conduct has forever scarred and continues to scar Mr. Rosenberg.

4      14.    Counterdefendant went to extreme lengths to single out Mr. Rosenberg as the

5  company fall guy, publicly beat him up, and purposely cause harm to him and his family.

6      15.    The actions of Counterdefendant constitute extreme and outrageous conduct that is

7  and was likely to inflict severe emotional distress on Mr. Rosenberg.

8      16.    As a direct and proximate result of Counterdefendant's extreme and outrageous

9  conduct, Mr. Rosenberg has experienced and is experiencing severe emotional distress.

10      17.    Just thinking about Redflex's despicable conduct makes Mr. Rosenberg nauseous,

11  sick, depressed, and irritable.

12      18.    Counterdefendant's public campaign to destroy Mr. Rosenberg immediately sent

13  Mr. Rosenberg into depression, causing Mr. Rosenberg to seek counsel in a psychologist and

14  others. Mr. Rosenberg's despair has often times prevented him from enjoying everyday activities,

15  and left him feeling sad and isolated, straining his ability to maintain healthy relationships with

16  others.

17      19.    Mr. Rosenberg is constantly ruminating over Redflex's intentional and outrageous

18  conduct, leaving him often in a state of shock, and causing Mr. Rosenberg energy loss, sleep loss,

19  guilt, and weight changes.

20      20.    Redflex's conduct has also caused significant financial consequences,

21  compounding Mr. Rosenberg's emotional distress.  Specifically, Redflex publicly terminated Mr.

22  Rosenberg, wrongfully taking away his severance benefits, freezing all his company stock, taking

23  away his health insurance, and rendering him ineligible to even obtain unemployment benefits.

24      21.    Since Redflex's false statements were repeatedly printed in the largest traditional

25  and on-line media outlets, Mr. Rosenberg can never secure the same level of employment as he

26  enjoyed previously, or secure employment servicing the public sector, where he spent the last

27  decade of his career.  This causes him additional emotional distress.

28      22.    The Rosenbergs have also experienced public shame from Mr. Rosenberg's

1   professional and personal network.

2       23.    All of Mr. Rosenberg's emotional distress has resulted from Redflex's wrongful

3   and outrageous conduct.

4       24.    As a direct and proximate result of Counterdefendant's intentional infliction of

5   emotional distress upon Counterclaimants, Mr. Rosenberg is entitled to recover compensatory and

6   punitive damages.

7       25.    Counterdefendants identified as Does, XYZ Corporations and Black Partnerships are

8   named fictitiously.  In the event that Mr. Rosenberg discovers the identities of additional parties

9   liable to them, Mr. Rosenberg will amend this counterclaim and substitute those parties for those

10   parties fictitiously named.

11       WHEREFORE, Mr. Rosenberg prays for relief as follows:

12   a.  For damages against Counterdefendant for its intentional infliction of emotional

13        distress on Mr. Rosenberg in the form of compensatory damages and punitive

14        damages; and

15   b.  For such further relief as the Court deems just and proper.

16   RESPECTFULLY SUBMITTED this 1st day of April, 2014.

17                   MILLIGAN LAWLESS, P.C.

18

19                   /s/ James Burr Shields

20                   James Burr Shields
                 Emily D. Armstrong

21                   Attorneys for Defendants

22   Filed with azTurboCourt and
MAILED April 1, 2014 to:

23   Daniel P. Quigley
Betsey Lamm

24   COHEN KENNEDY DOWD & QUIGLEY
2425 E. Camelback Rd., Suite 1100

25   Phoenix, AZ 85016
dquigley@ckdqlaw.com

26   blamm@ckdqlaw.com
Attorneys for Plaintiff

27

28   /s/ Nicole Griesbach

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

# EXHIBIT D

James Burr Shields, Esq.
Arizona Bar No. 011711
Burr@MilliganLawless.com
Emily D. Armstrong, Esq.
Arizona Bar No. 030082
Emily@milliganlawless.com
MILLIGAN LAWLESS, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018
Telephone:  (602) 792-3500
*Attorneys for Defendants*

1
2
3
4
5
6
7

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| REDFLEX TRAFFIC SYSTEMS, INC., a Delaware corporation<br><br>Plaintiff,<br><br>v.<br><br>AARON M. ROSENBERG and LISA F. ROSENBERG, husband and wife,<br><br>Defendants. | No.  CV2013-001166<br><br>**AMENDED[1] MOTION FOR LEAVE TO FILE AMENDED COUNTERCLAIM**<br><br>(Assigned to the Hon. Douglas Rayes) |
| AARON M ROSENBERG and LISA F. ROSENBERG, husband and wife,<br><br>Counterclaimants,<br><br>v.<br><br>REDFLEX TRAFFIC SYSTEMS, INC., a Delaware corporation; DOES I-X; BLACK PARTERNERSHIPS I-X; and XYZ CORPORATIONS I-X,<br><br>Counterdefendants. | |

## <u>INTRODUCTION</u>

On February 25, 2014, this Court found the Rosenbergs had not adequately pled the

---

[1] The only difference in this Amended Motion for Leave to File an Amended Counterclaim it Exhibit B.  The substance of the motion is unchanged.

1  emotional distress element of their Intentional Infliction of Emotional Distress ("IIED")

2  claim, "but that such deficiency could be cured." Accordingly, the Court ordered "that Mr.

3  Rosenberg may seek leave to file an amended counterclaim to more specifically plead the

4  nature of his emotional distress." See order attached as Exhibit A.

5      Pursuant to this Court's Order and Arizona Rule of Civil Procedure 15,

6  Counterclaimant Aaron Rosenberg hereby moves for leave to amend his IIED claim as

7  follows.

8                              **BACKGROUND**

9  **I.  Redflex's Extreme and Outrageous Conduct.**

10     Redflex provides traffic law enforcement services and technology to various cities,

11 states, counties, and municipalities ("governments") across the country in exchange for

12 payment.   Redflex executives overtly entertained, wined and dined, and spoiled key

13 officials in such governments in order to secure lucrative contracts for Redflex with those

14 governments.   Redflex often utilized Mr. Rosenberg as its mouthpiece to carry out its

15 objectives in this regard. For the most part, Mr. Rosenberg carried out such directives. At

16 the time, Redflex praised Mr. Rosenberg for this conduct and for his success in securing

17 many government contracts.

18     In many instances, Redflex's above-mentioned conduct was highly unethical or even

19 illegal. In 2012, the Chicago Tribune revealed that Redflex had paid a hotel bill for a key

20 city official.   In an attempt to save face from the negative press, Redflex asked Mr.

21 Rosenberg to take the blame for the hotel bill. Mr. Rosenberg refused to do so.

22     To deflect the negative press and appear ethical to shareholders, Redflex conducted

23 an internal audit of the company's entertainment practices. Mr. Rosenberg participated in

24 the audit.   The audit was actually used, in part, in an effort to gain evidence to terminate

25 Mr. Rosenberg, the planned fall guy for Redflex's misdeeds.

26     After the audit, Redflex intentionally and maliciously began a public smear

27 campaign in the press against Mr. Rosenberg, painting him as a rogue employee, who acted

28 without corporate backing when he entertained key government officials. When Redflex

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

1   made such statements to the press, shareholders, and others, it knew such statements were
2   false and defamatory.   Redflex also publicly and wrongfully terminated Mr. Rosenberg,
3   claiming it was cleaning house and purging the officials associated with the old Redflex
4   way.   Again, this is not true as Redflex's entertainment culture was institutionalized in
5   nature and Redflex retained many of the executives, board members, and employees who
6   promoted same.   Redflex also purposefully grossly understated the scope of its misconduct.
7       The Rosenbergs filed a claim for IIED against Redflex, based, in part, on the above-
8   referenced conduct.   This Court found such conduct sufficiently extreme and outrageous
9   for purposes of an IIED claim.

10  **II. Mr. Rosenberg's Emotional Distress**

11      This Court found that Mr. Rosenberg needed to file an amended pleading, alleging
12  his emotional distress in more detail.   A red-lined copy of the proposed amended pleading
13  is attached as Exhibit B.   In the amended counterclaim, Mr. Rosenberg alleges that
14  Redflex's conduct has made him nauseous, sick, depressed, sad, and irritable.   Redflex's
15  conduct has caused Mr. Rosenberg to seek counsel in a psychologist and others.   Redflex's
16  conduct has also caused Mr. Rosenberg energy loss, sleep loss, guilt, and weight changes.
17  It has also often times prevented him from enjoying everyday activities, and left him
18  feeling sad and isolated, straining his ability to maintain healthy relationships with others.
19  Redflex's conduct has also brought public shame to Mr. Rosenberg and his family, and has
20  had dire financial consequences for the Rosenbergs.   This is alleged in more detail in the
21  attached proposed counterclaim.

22                          **LEGAL STANDARD**

23      Under Arizona Rule of Civil Procedure 15(a), leave to amend a party's pleading
24  "shall be freely given when justice requires."   Ariz. R. Civ. P. 15(a).   Amendments are to
25  be "liberally allowed; trial on the merits of the claim is favored."   *Owen v. Superior Court*,
26  133 Ariz. 75, 79 (1982).

27  ///

28  ///

                                    3

## ARGUMENT

This Court should grant Mr. Rosenberg's request for leave to amend for multiple reasons. First, this Court found that Mr. Rosenberg could "seek leave to file an amended counterclaim to more specifically plead the nature of his emotional distress." Accordingly, this Court has already determined that the proposed amended pleading is proper.

Second, the proposed amendment will further the interests of justice and any deficiencies in the Rosenbergs' original pleading have been cured. As stated above, Mr. Rosenberg amended his counterclaim to allege that Redflex's conduct has made him nauseous, sick, depressed, and irritable. It has caused him to seek counsel in a psychologist and others, and has caused Mr. Rosenberg energy loss, sleep loss, guilt, and weight changes. Such conduct is sufficient to allege the emotional distress necessary for an IIED claim.

Third, there has been no delay or bad faith in filing the IIED claim, and no prejudice to Redflex would result from allowing same. Rather, Mr. Rosenberg pled his IIED claim and theory in his original counterclaim, making Redflex well aware of his position. Redflex has also already issued discovery requests specific to this claim. Thus, no prejudice or harm will result to Redflex by allowing the proposed amendment.

## CONCLUSION

Arizona's standard for allowing amendments is very liberal. Because of this and the foregoing, Mr. Rosenberg respectfully requests that this honorable Court grant him leave to file his amended Counterclaim, attached as Exhibit B.

DATED this 4th day of April, 2014.

MILLIGAN LAWLESS, P.C.

/s/ James Burr Shields
James Burr Shields
Emily D. Armstrong
Attorneys for Defendants

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

4

1  The foregoing was MAILED
   on April 4, 2014 to:
2
   Daniel P. Quigley
3  Betsey Lamm
   COHEN KENNEDY DOWD & QUIGLEY
4  2425 E. Camelback Rd., Suite 1100
   Phoenix, AZ 85016
5  dquigley@ckdqlaw.com
   blamm@ckdqlaw.com
6  Attorneys for Plaintiff
7  /s/ Nicole Griesbach
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Milligan Lawless, P.C.
5050 North 40th Street, Suite 200
Phoenix, Arizona 85018

EXHIBIT A

Michael K. Jeanes, Clerk of Court
*** Electronically Filed ***
03/03/2014 8:00 AM

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-001166                                                  02/25/2014

CLERK OF THE COURT
JUDGE DOUGLAS L. RAYES                                          T. Springston
                                                               Deputy

REDFLEX TRAFFIC SYSTEMS INC              DANIEL P QUIGLEY

v.

AARON M ROSENBERG, et al.                JAMES BURR SHIELDS II


DOCKET-CIVIL-CCC


**UNDER ADVISEMENT RULING**

Redflex Traffic Systems, Inc.'s ("Redflex") Motion to Dismiss Count II of Defendants' Counterclaim (Intentional Infliction of Emotional Distress) was taken under advisement following the oral argument of February 3, 2014. The Court has considered Redflex Traffic System, Inc.'s Motion to Dismiss; Defendants/Counterclaimants' ("Rosenbergs") Response; Redflex's Reply; and the arguments of counsel.

Redflex argues that the Counterclaim is inadequate and fails to state a claim for intentional infliction of emotional distress because it fails to allege the requisite severe emotional distress and because it does not allege extreme and outrageous conduct.

The Court finds that the allegations of the Counterclaim do not sufficiently allege emotional distress, but that such deficiency can be cured.

The more difficult question is whether the Counterclaim alleges conduct that is sufficiently extreme and outrageous to state a claim for intentional infliction of emotional distress. The Court is responsible to make the initial determination as to whether the alleged conduct is extreme and outrageous. The Court must determine whether reasonable minds could differ about whether the conduct is sufficiently outrageous; was Defendants' conduct so outrageous "to go beyond all possible bounds of decency and to be regarded as atrocious and

Docket Code 926                          Form V000A                          Page 1

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2013-001166                                      02/25/2014

utterly intolerable in a civilized community." *Johnson v McDonald*, 197 Ariz. 155, 160, 3 P.3d
1075, 1080 (App. 1979).

     The Counterclaim alleges that Redflex, in an effort to retaliate against Mr. Rosenberg for
revealing a company policy of bribing customers, made him the scapegoat in press releases. The
Counterclaim alleges that Redflex portrayed Mr. Rosenberg as "a rogue employee" to scape goat
him for Redflex's inappropriate activity of bribing customers in press releases and internal
reports.

     Assuming the truth of the allegations of the Counterclaim, as the Court must, the Court
finds reasonable minds could differ about whether the conduct alleged in the Counterclaim is
sufficiently outrageous to state a claim for intentional infliction of emotional distress.

     **IT IS ORDERED** granting Redflex's Motion to Dismiss Count II of Defendants'
Counterclaim as to the sufficiency of the allegations of the emotional distress suffered by Mr.
Rosenberg.

     **IT IS FURTHER ORDERED** that Mr. Rosenberg may seek leave to file an amended
counterclaim to more specifically plead the nature of his emotional distress.

     **IT IS FURTHER ORDERED** denying Redflex's Motion to Dismiss regarding the
sufficiency of the allegations of extreme and outrageous conduct.

     **IT IS FURTHER ORDERED** granting Redflex's Motion to Dismiss as to Mr.
Rosenberg.

     Effective April 15, 2014 new civil rules and forms are in effect for managing cases
moving to trial. Be sure to review the new Civil Rules 16, 26, 37, 38, 72 through 74 and 77.

     ALERT: The Arizona Supreme Court Administrative Order 2011-140 directs the Clerk's
Office not to accept paper filings from attorneys in civil cases. Civil cases must still be initiated
on paper; however, subsequent documents must be eFiled through AZTurboCourt unless an
exception defined in the Administrative Order applies.

EXHIBIT B

1  | **Milligan Lawless, P.C.**
2  | **5050 N. 40th Street, Suite 200**
   | **Phoenix, Arizona 85018**
3  | **(602) 792-3531 (Office)**
   | **(602) 307-0784 (Facsimile)**
4  | James Burr Shields II, State Bar #011711
   | burr@milliganlawless.com
5  | Attorneys for Defendants

6  |         IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

7  |            IN AND FOR THE COUNTY OF MARICOPA

8  | REDFLEX TRAFFIC SYSTEMS, INC.,  )
9  | a Delaware corporation,          )      Case No. CV2013-001166
                                      )
10 |              Plaintiff,          )
                                      )      **AMENDED COUNTERCLAIM**
11 | vs.                              )
                                      )
12 | AARON M. ROSENBERG and LISA F.   )
13 | ROSENBERG, husband and wife,     )      (Assigned to the Honorable
                                      )      Douglas Rayes)
   |              Defendants.         )
14 |                                  )
15 | AARON M. ROSENBERG and LISA F.   )
   | ROSENBERG, husband and wife,     )
16 |                                  )
   |              Counterclaimants.   )
17 | vs.                              )
                                      )
18 | REDFLEX TRAFFIC SYSTEMS, INC.,   )
19 | a Delaware corporation; DOES I-X;)
   | BLACK PARTNERSHIPS I-X; and      )
20 | XYZ CORPORATIONS I-X.            )
                                      )
21 |              Counterdefendants.  )

22 |                 **COUNTERCLAIMS** - - - - - - - - - - - - -  `Formatted: No underline`

23 |     As and for their amended counterclaims against Counterdefendant, Counterclaimants,

24 | Aaron M. Rosenberg and Lisa F. Rosenberg, complain and allege as follows:

25 |                 **Count I – Defamation**

26 |     1.    Counterdefendant Redflex Traffic Systems, Inc. ("Redflex") has published

27 |                                  1

28 |

false and defamatory allegations concerning Counterclaimant, Aaron M. Rosenberg. Counterdefendant has done so with malice and, as a result, in addition to damages in the form of lost, past and future income and compensatory damages, Counterclaimants are entitled to punitive damages against Counterdefendant, Redflex.

2.      Continuously during Counterclaimants Aaron Rosenberg's employment with Counterdefendant, Counterdefendant instilled in Counterclaimant its practice of lavishly providing customers, including governmental officials, with perquisites and gifts in various forms. This practice was the result of decisions made by Counterdefendant's President and Chief Executive Officer as well as Counterdefendant's Board of Directors. In complying with the directives of these officials, Counterclaimant, Aaron Rosenberg, was simply "carrying out orders." At no time during his employment with Counterdefendant did Counterclaimant, Aaron Rosenberg, engage in any conduct outside of the course and scope of his employment as defined by Counterdefendant's President and Chief Executive Officer. Nonetheless, beginning in approximately October 2012, Counterdefendant began to portray Counterclaimant as a rogue employee in order to mislead the public and governmental officials as to the full nature and extent of Counterdefendant's pattern and practice. Counterdefendant falsely portrayed Counterclaimant as such in a widespread media campaign, in many public and private meetings, and in various company reports, intentionally and/or recklessly. Counterdefendant's conduct in this regard was and is extreme and outrageous.

3.      During    Counterclaimant's    employment    with    Counterdefendant, Counterdefendant bestowed gifts and bribes on company officials in dozens of municipalities within, but not limited to the following states: California, Washington, Arizona, New Mexico, Texas, Colorado, Massachusetts, North Carolina, Florida, New Jersey, Tennessee, Virginia, and Georgia.

4.      As previously set forth in Defendants' answer, at all times, Counterclaimant

2

1   Aaron Rosenberg's expense reports were approved by Counterdefendant, some of which
2   contained specific references to payments or other benefits to governmental officials within
3   the above-described states. Indeed, Counterclaimant specifically, in his expense reports,
4   identified expenditures as "gifts" for city officials and was ordered to "proceed in a
5   cautious and appropriate manner in providing gifts and entertainment to city officials."
6   (*See* Exhibit "C" to this counterclaim, Counterdefendant's November 16, 2006 e-mail to
7   Counterclaimant reflecting Counterdefendant's Chief Executive Officer's "directive that
8   (Counterclaimant) proceed in a cautious and appropriate manner in providing gifts . . . to
9   city officials consistent with (Counterdefendant's) policy.")

10          5.      In October 2012, the Chicago Tribune reported that Counterdefendant, in
11   2010, had paid a hotel bill for a Chicago city official in the amount of $910. Shortly after
12   this expense was incurred, Counterclaimant met with Counterdefendant's Chief Executive
13   Officer, Chief Financial Officer and General Counsel.    These individuals told
14   Counterclaimant to "take one for the team" and accept full blame for the expenditure.
15   Counterdefendant went on to describe how the company would fully reimburse
16   Counterclaimant, should he participate in this illegal scheme and reimbursement process, so
17   Counterclaimant would not be out of pocket any money. Counterdefendant's conduct in
18   this regard was also extreme and outrageous.   Counterclaimant refused to participate in
19   such a scheme and process.

20          6.      On or about October 14, 2012, the Chicago Tribune reported receiving the
21   following information from Counterdefendant:

22          "Lawyers for Redflex Traffic Systems, Inc. said the firm disciplined the
            Executive Vice President involved and sent him to anti-bribery training after
23          the incident, but did not report the violation. . . . Rosenberg was warned by
            Reflex' top executives that this was a potential conflict of interest issue and a
24          violation of Company policy and a follow-up event would result in his
            termination."
25

26          7.      In a further effort to impugn Counterclaimant's character and make him the

                                              3

scapegoat of Counterdefendant's practice of providing gifts and bribes to company officials, on October 17, 2012, the Chicago Tribune quoted Counterdefendant, once again, stating:

> "In an interview last week, Redflex' General Counsel Andrejs Bunske told the newspaper its exhaustive probe of the expense reports found only one improper expenditure for bills and, as a result, the Company overhauled its expense reporting policies and sent the Executive Vice President (Counterclaimant) involved to anti-bribery training."

8.      Contrary to Counterdefendant's false and defamatory communications, Counterclaimant was never put through "anti-bribery" training. Counterclaimant was never reprimanded and only received exemplary annual performance reviews during this period. Counterdefendant's above-described lies concerning Counterclaimant were communicated by Counterdefendant's General Counsel to the Chicago Tribune in order to preserve Counterdefendant's contracts and deter the Chicago Tribune from conducting further investigation which would reveal Counterdefendant's practice of providing lavish gifts to and bribing government officials. In November 2012, Counterdefendant held its first ever "foreign corrupt practices act" training.   The day after receiving this training, Counterclaimant contacted Counterdefendant's General Counsel to discuss information about which he was familiar which established that Counterdefendant's policy and practice of providing gifts to government officials was improper.   During this meeting, Counterclaimant thoroughly informed Counterdefendant's General Counsel of the nature of the practice. Following this disclosure, Counterclaimant cooperated with a subsequent internal investigation by the law firm of Sidley Austin into the policy and practice. Counterclaimant has provided similar information to law enforcement at both the state and federal level.   Counterdefendant's current CEO developed and widely communicated a policy that "encourages" whistleblowing behaviors. As outlined above, Counterclaimant was the first employee to adhere to this new policy for reporting unethical behaviors.   This included providing disclosures about various Redflex executives and various Redflex business practices promoted and directed by the CEO which would be considered bribes and

4

gratuities. These disclosures were maliciously used by the Counterdefendant against the

Counterclaimant in its effort to discredit and destroy the Counterclaimant's reputation. -

9.     On February 20, 2013, Counterdefendant terminated Counterclaimant's

employment. and sued Counteclaimant. Shortly after doing so, Counterdefendant sued upon

information and belief, Robert DeVincenzi, CEO of parent company Redflex Holdings Ltd.,

provided a written statement, which, according to the Tribune, stated "we terminated the

employment of [Counterclaimant and ] because our internal investigation revealed that he

was violating company policies."

9.10.  Counterdefendant's parent company, Redflex Holdings, issued a press

releasesrelease which continued to disseminate false and defamatory information concerning

Counterclaimant including, without limitation, the baseless allegationallegations that

Counterclaimant had engaged"acted improperly in "dishonest and unethical conduct over a

number of years"allowing [the Chicago] arrangement to occur," and had engaged in a

"protracted and covert scheme to misappropriate "numerous violations of company funds

over a periodpolicy and company code of years."conduct . . . relating to fraud and

embezzlement involving personal expenses."

10.  As a result of Counterclaimant's disclosures as well as the Sidley Austin

investigation, Counterdefendant knows, full well and without question, that Counterclaimant

was simply "carrying out his orders" in connection with gifts and payments to governmental

officials. Nonetheless, Counterdefendant continues to publish false and defamatory

information concerning Counterclaimant in public records including the website of its parent

company, Redflex Holdings.

11.     As a direct and proximate result of the above-described false and defamatory

communications concerning Counterclaimant by Counterdefendant, Counterclaimant's

reputation and his ability to earn income has been ruined. Counterclaimant has experienced

income loss, compensatory damages and, as previously alleged, is entitled to recover

5

Formatted

1   punitive damages.

2       WHEREFORE, Counterclaimants pray for relief as follows:

3       a.    For damages against Counterdefendant for defamation in the form of lost past

4       and future income, compensatory damages and punitive damages; and

5       b.    For such further relief as the Court deems just and proper.

6

7   **Count II – Intentional Infliction of Emotional Distress (Aaron Rosenberg)**

8       12.    Counterclaimant Aaron Rosenberg incorporates paragraphs 1-11 of ~~its~~the

9   ~~Rosenbergs'~~ Counterclaim, as set forth above, for this paragraph 12 of ~~its~~his Counterclaim,

10  as if fully set forth herein.~~-~~

11      13.   ~~The  actions  of  Counterdefendant,  as  described  above,~~

12  ~~constitute~~Counterdefendant's conduct, as described above, was intentional and nearly

13  destroyed Mr. Rosenberg's career and his personal life, all just to salvage the company

14  bottom line. While Mr. Rosenberg is slowly now returning to a more normal life as time

15  passes, Redflex's conduct has forever scarred and continues to scar Mr. Rosenberg.

16      ~~13.~~14. Counterdefendant went to extreme lengths to single out Mr. Rosenberg as the

17  company fall guy, publicly beat him up, and purposely causing harm to him and his family.

18  The actions of ~~Counterdefendant~~constitute extreme and outrageous conduct that is and was

19  likely to inflict severe emotional distress on ~~Counterclaimants~~Mr. Rosenberg.

20      15.   As a direct and proximate result of Counterdefendant's extreme and

21  outrageous conduct, ~~Counterclaimants have~~ Mr. Rosenberg has experienced and is

22  experiencing severe emotional distress.

23      16.   Just thinking about Redflex's despicable conduct makes Mr. Rosenberg

24  nauseous, sick, depressed, and irritable.

25      17.   Counterdefendant's public campaign to destroy Mr. Rosenberg immediately

26  sent Mr. Rosenberg into depression, causing Mr. Rosenberg to seek counsel in a

27

28

1   psychologist and others. Mr. Rosenberg's despair has often times prevented him from

2   enjoying everyday activities, and left him feeling sad and isolated, straining his ability to

3   maintain healthy relationships with others.

4       18.   Mr. Rosenberg is constantly ruminating over Redflex's intentional and

5   outrageous conduct, leaving him often in a state of shock, and causing Mr. Rosenberg

6   energy loss, sleep loss, guilt, and weight changes.

7       19.   Redflex's conduct has also caused significant financial consequences,

8   compounding Mr. Rosenberg's emotional distress. Specifically, Redflex publicly terminated

9   Mr. Rosenberg, wrongfully taking away his severance benefits, freezing all his company

10  stock, taking away his health insurance, and rendering him ineligible to even obtain

11  unemployment benefits.

12      20.   Since Redflex's false statements were repeatedly printed in the largest

13  traditional and on-line media outlets, Mr. Rosenberg can never secure the same level of

14  employment as he enjoyed previously, or secure employment servicing the public sector,

15  where he spent the last decade of his career. This causes him additional emotional distress.

16      21.   The Rosenbergs have also experienced public shame from Mr. Rosenberg's

17  professional and personal network.

18      14.22. All of Mr. Rosenberg's emotional distress has resulted from Redflex's

19  wrongful and outrageous conduct.

20      15.23. As a direct and proximate result of Counterdefendant's intentional infliction of

21  emotional distress upon Counterclaimants, Counterclaimants areMr. Rosenberg is entitled to

22  recover compensatory and punitive damages.

23      16.24. Counterdefendants identified as Does, XYZ Corporations and Black

24  Partnerships are named fictitiously. In the event that Counterclaimants discoverMr.

25  Rosenberg discovers the identities of additional parties liable to them, CounterclaimantsMr.

26

27                                      7

28

> **Formatted:** List Paragraph, Indent: Left: 0",
> First line: 0.5", Numbered + Level: 1 +
> Numbering Style: 1, 2, 3, … + Start at: 12 +
> Alignment: Left + Aligned at: 0.25" + Indent
> at: 0.5"

Rosenberg will amend this ~~complaint~~counterclaim and substitute those parties for those parties fictitiously named.

WHEREFORE, ~~Counterclaimants pray~~Mr. Rosenberg prays for relief as follows:

a. For damages against Counterdefendant for its intentional infliction of emotional distress on ~~Counterclaimants~~Mr. Rosenberg in the form of compensatory damages and punitive damages; and

b. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this _____ day of ~~October, 2013~~April, 2014.

MILLIGAN LAWLESS, P.C.

James Burr Shields
Attorneys for Defendants/Counterclaimants

* * *

COPY of the foregoing mailed
this _____ day of ~~October, 2013~~April, 2014 to:

Daniel P. Quigley
Betsy J. Lamm
Cohen Kennedy Dowd & Quigley
2425 East Camelback Road #1100
Phoenix, AZ  85016
dquigley@ckdqlaw.com
blamm@ckdqlaw.com
Attorneys for Plaintiff

8