# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 14-3420-GW(RZx) | | Date | June 19, 2014 |
|---|---|---|---|---|
| Title | *Aaron M. Rosenberg v. Redflex Traffic Systems, Inc., et al.* | | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Tom Bienert | John P. LeCrone |
| Ali Matin | Jonathan L. Segal |

**PROCEEDINGS:**    **DEFENDANTS REDFLEX TRAFFIC SYSTEMS, INC. AND REDFLEX TRAFFIC SYSTEMS (CALIFORNIA), INC.'S NOTICE OF MOTION AND MOTION TO DISMISS, STAY, OR IN THE ALTERNATIVE, TRANSFER [12]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Defendants' motion is continued to **July 7, 2014 at 8:30 a.m.** Defendants' supplemental brief will be filed by June 26, 2014. Plaintiffs' response will be filed by July 1, 2014. Parties may appear telephonically provided that notice is given to the clerk at least two business days prior to the hearing.

|  | : | 07 |
|---|---|---|
| Initials of Preparer | JG | |

*Aaron Rosenberg v. Redflex Traffic Systems, Inc., et al.*; Case No. CV-14-3420-GW(RZx)
Tentative Rulings on: (1) Plaintiff's Request for Remand and (2) Defendant's Motion to
Dismiss, Stay, or Transfer

Plaintiff Aaron Rosenberg ("Rosenberg") filed this employment action in state court against
Defendants Redflex Traffic Systems, Inc. ("Redflex DE") and Redflex Traffic Systems (California),
Inc. ("Redflex CA") (collectively, "Redflex"). *See* Complaint ("Compl."), Docket No. 1, Ex. A.[1]
Redflex DE removed to this Court on a fraudulent joinder theory, claiming that Redflex CA was a
sham defendant. *See* Removal Notice, Docket No. 1. A week after removing the action, citing a
parallel Arizona state-court proceeding and a forum-selection clause in Rosenberg's employment
contract, Redflex DE filed the instant motion to dismiss, stay, or transfer this case to Arizona. *See*
Motion to Dismiss, Stay, or Transfer ("Mot."), Docket No. 12. In his Opposition, Rosenberg argues
that Redflex DE failed carry its burden of establishing fraudulent joinder, meaning that the action
should be remanded to state court. *See* Opposition to Motion to Dismiss, Stay, or Transfer ("Opp."),
Docket No. 15. For the reasons discussed below, the Court would agree that Redflex DE has failed
to carry its burden of establishing fraudulent joinder. Thus, the Court would REMAND the action.

## I. Background

Redflex DE, a non-California corporation,[2] and Redflex CA, a California corporation, are
corporate entities that develop, manufacture, and/or sell digital photo enforcement devices (*e.g.*, red
light, speed, and school bus arm cameras) to local governments. Compl. ¶¶ 3-4, 12; Declaration of
Aaron Rosenberg ("Rosenberg Decl."), Docket No. 17, at Exs. 1-8. Rosenberg began working for
Redflex in 2002 as a Vice President of North American sales. DeVincenzi Decl. ¶ 6. During his
nearly 11-year tenure with the company, Rosenberg was promoted multiple times, ultimately to the
position of Executive Vice President of Sales. *Id.* ¶ 7. Throughout his employment, Rosenberg was

---

[1] The Complaint also names "Redflex Traffic Systems, Inc, an Arizona Corporation," and "Redflex
Holdings Limited, an Australian form of entity unknown." Robert DeVincenzi, a non-executive member of Redflex
DE's Board of Directors, states that "there is no . . . entity named 'Redflex Traffic Systems, Inc.' organized and
existing under the laws of the State of Arizona." Declaration of Robert DeVincenzi ("DeVincenzi Decl."), Docket
No. 4, at ¶ 3. Because neither the Australian or apparently-non-existent Arizonan Redflex entities are relevant to this
Tentative Order, the Court will refer only to Redflex DE and Redflex CA.

[2] Redflex DE is a Delaware corporation with an Arizona principal place of business. DeVincenzi Decl. ¶ 2.

charged with attracting and retaining clients, a major aspect of which involved building relationships with government officials in jurisdictions where Redflex sought to do business. Compl. ¶ 12. In at least 2006, 2008, and 20011, Rosenberg signed written employment contracts with Redflex DE. Request for Judicial Notice ("RJN"), Docket No. 13, at Exs. A-C. Rosenberg never signed a written employment contract with Redflex CA. However, Rosenberg worked out of Redflex CA's Culver City, California offices. Rosenberg Decl. ¶ 2. Rosenberg also negotiated and signed several photo-enforcement contracts as an officer of Redflex CA. Rosenberg Decl., Exs. 1-8.[3]

Rosenberg alleges that, from the outset of his employment, Redflex encouraged him to use entertainment, gifts, or other inducements to secure contracts from government officials. *Id.* In 2013, Rosenberg allegedly reported his concerns about potential corruption during a meeting with the Office of the Inspector General of the City of Chicago (the "Chicago Meeting"). *Id.* ¶¶ 17-18. Two weeks after the Chicago Meeting, on February 20, 2013, Rosenberg was fired. *Id.* ¶ 19.

That same day, Redflex DE initiated an action against Rosenberg and his wife (together, the "Rosenbergs") in Arizona state court (the "Arizona action"), asserting claims for: (1) fraud, (2) breach of contract, (3) breach of the implied covenant of good faith and fair dealing, and (4) declaratory relief. *See* RJN, Ex. D. At root, the Arizona action asserts that Rosenberg submitted expense requests for expenses that were personal, inappropriate, or unlawful. *Id.* ¶ 23. The Rosenbergs answered the Complaint in the Arizona action and asserted counterclaims. RJN, Ex. E. The Rosenbergs and Redflex DE are currently litigating the Arizona action in Arizona state court.

In February 2014, Rosenberg filed the instant case in Los Angeles Superior Court. His Complaint asserts claims against Redflex DE and Redflex CA for: (1) termination in violation of public policy (the "*Tameny*" claim), (2) wrongful termination in violation of Cal. Labor Code § 1102.5, and (3) failure to indemnify in violation of Cal. Labor Code § 2802. *See generally* Compl.

On May 2, 2014, Redflex DE removed the action to this Court on a fraudulent joinder theory. *See* Removal Notice ¶¶ 9-17. In essence, Redflex DE argues that all of Rosenberg's claims are premised on the existence of an employment relationship. *See id.* ¶ 14. Because, according to Redflex DE, Rosenberg was never employed by Redflex CA, Rosenberg cannot possibly pursue his

---

[3]Redflex DE and Redflex CA's precise corporate relationship is unclear from the materials in the record.

employment claims against Redflex CA. *Id.* ¶¶ 15-17; Mot. at 12:20-13:16; Reply, Docket No. 19, at 2:17-8:4. Accordingly, Redflex DE asserts that the Court should treat Redflex CA as a sham defendant and disregard its citizenship for purposes of determining subject matter jurisdiction. *Id.*

A week after removing the case, Redflex DE filed the instant Motion to Dismiss, Stay, or Transfer the case to Arizona. *See generally* Mot. In his Opposition, Rosenberg argues that, rather than ruling on Redflex DE's Motion, the Court should remand this case to the Superior Court. *See generally* Opp.[4] Rosenberg points out that he worked in Redflex CA's office and signed contracts as an officer of Redflex CA. *Id.* at 3:15-9:23. Based on these facts, Rosenberg contends, Redflex DE cannot carry its burden of establishing "removal jurisdiction" based on fraudulent joinder. *Id.*

## II. Legal Standard

The right to remove a case to federal court is entirely a creature of statute. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).[5] Because "[i]t is presumed that a cause lies outside the limited jurisdiction of federal courts," *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 684 (9th Cir. 2006) (quotations omitted), and because the Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," the defendant always has the burden of establishing compliance with the removal statutes. *Gaus v. Miles, Inc.*, 980 F. 2d 564, 566 (9th Cir. 1992). At a minimum, establishing compliance with the removal statutes means showing that the removed action falls within the federal court's original subject matter jurisdiction. *Id.*; 28 U.S.C. § 1441(a).

Defendants here removed on diversity grounds. The general rules for diversity jurisdiction are no doubt familiar. Diversity jurisdiction exists where the plaintiff has different citizenship from all defendants and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a); *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). For diversity removals, therefore, the removing defendant typically must show that the parties were completely diverse, both when the case

---

[4]Rosenberg's counsel advised Redflex DE's counsel that Rosenberg intended to challenge the removal and sought to coordinate a Motion to Remand with Redflex DE's Motion. *See* Declaration of Michael R. Williams, Docket No. 16, at Ex. 2 at 2. However, it appears that the parties were unable to coordinate their filings.

[5]Federal courts have an independent duty to ensure that subject matter jurisdiction exists at all stages of a case, whether or not the parties raise the issue. *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 966 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments"). Thus, the Court should reject Defendants' suggestion that it disregard Ronsenberg's remand request because it was not raised in a separate motion. *See* Reply at 8:6-24.

was filed and removed, *Strotek Corp. v. Air Transp. Ass'n. of Am.*, 300 F.3d 1129, 1131 (9th Cir. 2002), and that the amount in controversy exceeded $75,000 at the time of removal, *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1091 (9th Cir. 2003).[6]

"Although an action [generally] may be removed to federal court only where there is complete diversity of citizenship, 'one exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.''" *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009) (quoting *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067-68 (9th Cir. 2001)). "Fraudulent joinder is a term of art. If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). In cases of fraudulent joinder, a district court may disregard the so-called "sham" defendant's citizenship for purposes of establishing diversity. *Hunter*, 582 F.3d at 1043 (citing *Morris*, 236 F.3d at 1067); *Plute v. Roadway Package Sys., Inc.*, 141 F.Supp.2d 1005, 1008 (N.D. Cal. 2001) ("A district court may disregard a non-diverse party named in the state court complaint . . . if the non-diverse party is joined as a sham or if the joinder is fraudulent.").

Because there is a general presumption against fraudulent joinder, however, defendants seeking to rely on the exception bear a "heavy" burden of proof. *Mendoza v. Host Int'l, Inc.*, No. 13-CV-8671-GHK(ASx), 2014 U.S. Dist. LEXIS 13282, at *3 (C.D. Cal. Feb. 3, 2014) (quoting *Hunter*, 582 F.3d at 1046). To meet that burden, the removing party "must negate every possible scenario within the ambit of a well-pled claim," *Iniguez v. Vantium Cap., Inc.*, No. 13-00037-WHA, 2013 U.S. Dist. LEXIS 41776, at *6 (N.D. Cal. Mar. 25, 2013) (citations omitted), and must do so by "clear and convincing evidence," *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). A defendant is entitled to present facts in the form of summary judgment-type evidence showing the joinder to be fraudulent. *McCabe*, 811 F.2d at 1139; *Morris*, 236 F.3d at 1068 (citing *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir.1995) ("[F]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence")). But district courts "must resolve all disputed questions of fact," *Good v. Prudential Ins.*

---

[6]As with all jurisdictional matters, the requirements for "diversity jurisdiction [are] strictly construed." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983).

*Co. of Am.*, 5 F.Supp.2d 804, 807 (N.D. Cal. 1998), and "all material ambiguities in state law" in the plaintiff's favor, *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F.Supp.2d 1116, 1117 (N.D. Cal. 2002). "Thus, if there is a non-fanciful possibility that plaintiff can state a claim under state law against the non-diverse defendants, the court must remand." *Barsell v. Urban Outfitters, Inc.*, No. 09-CV-2604-MMM(RZx), 2009 U.S. Dist. LEXIS 123475, at *8 (C.D. Cal. July 1, 2009) (quotations omitted); *Sun v. Bank of Am. Corp.*, No. 10-CV-4-AG, 2010 U.S. Dist. LEXIS 19554, at *7 (C.D. Cal. Feb. 8, 2010) ("[I]n the Ninth Circuit, a . . . defendant is . . . fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the [defendant]").

### III. Analysis

Measured against the applicable legal standard, the "removal jurisdiction" question here boils down to this: Did Defendants present summary judgment-type evidence foreclosing any possibility that Rosenberg can show Redflex CA was his employer? As discussed below, the answer is no.[7]

As both parties recognize, Rosenberg can only bring his *Tameny* and Labor Code claims against an "employer." *See Miklosy v. Regents of Univ. of California*, 44 Cal.4th 876, 900 (2008) ("[A] *Tameny* action for wrongful discharge can only be asserted against an employer"); Cal. Lab. Code § 1102.5(b) ("*An employer*, or any person acting on behalf of the employer, shall not retaliate against *an employee* for disclosing information . . . to a government or law enforcement agency . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation") (emphasis added); *Hansen v. California Dep't of Corr. & Rehab.*, 171 Cal.App.4th 1537, 1546 (2008) ("[A] prerequisite to asserting a Labor Code section 1102.5 violation is the existence of an employer-employee relationship at the time the allegedly retaliatory action occurred"); Cal. Lab. Code § 2802(a) ("*An employer* shall indemnify his or her *employee* for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer") (emphasis added);

---

[7]Notwithstanding the choice-of-law provision in Rosenberg's contract with Redflex DE, neither party disputes that the threshold fraudulent joinder question – whether Rosenberg can possibly show that Redflex CA was his employer – is governed by California law.

*Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal.App.4th 1, 10, 15 (2007) (indicating that §
2802 liability turns on whether an employment relationship exists, and stating: "Subdivision (a) of
section 2802 obligates an employer to indemnify its employee 'for all necessary expenditures or
losses incurred by the employee in direct consequence of the discharge of his or her duties'").

But California law generally recognizes the concept of "joint employment," and courts have
either held or assumed that the concept applies to each type of claims which Rosenberg brings in this
action. *See, e.g., In re Ankeny*, 184 B.R. 64, 72-73 (B.A.P. 9th Cir. 1995) (finding that "joint
employer" doctrine applies to § 2802 claims and explaining: "California courts have recognized the
concept of dual or joint employers, and have interpreted various code provisions as placing liability
for one act or event upon two employers simultaneously") (collecting cases applying doctrine in
various contexts); *Blazek v. ADESA Cal., LLC*, No. 09-CV-1509-BTM(BLMx), 2009 U.S. Dist.
LEXIS 81317, at *4 (S.D. Cal. Sept. 4, 2009) (assuming that plaintiff can proceed on "joint
employer" theory for *Tameny* claims); *Warwick v. Univ. of the Pac.*, No. 08-CV-3904-CW, 2008
U.S. Dist. LEXIS 97207, at *18-*21 (N.D. Cal. Nov. 21, 2008) (same); *Waters v. Fid. Capital
Mortg. Brokers*, No. B-224016, 2011 Cal. App. Unpub. LEXIS 2576, at *11-*14 (Cal. App. 2d Dist.
Apr. 7, 2011) (same); *Paterson v. Cal. Dep't of Gen. Servs.*, No. 05-CV-827-MCE(JFMx), 2008
U.S. Dist. LEXIS 87365, at *7-*9 (E.D. Cal. Oct. 27, 2008) (assuming that plaintiff can proceed on
"joint employer" theory for § 1102.5 claim). *See also generally Martinez v. Combs*, 49 Cal. 4th 35,
50 & n. 16 (2010) ("[W]e have recognized that a person, by exercising significant control over the
employees of another, may come to share the [primary] employer's legal obligations") (collecting
cases); *Kowalski v. Shell Oil Co.*, 23 Cal.3d 168, 174 (1979) ("The possibility of dual employment
is well recognized in the case law").

In determining whether a person or entity constitutes an "employer" for joint employment
purposes (or otherwise), California courts have adopted various tests. *See, e.g., Martinez*, 49 Cal.4th
at 64; *Vernon v. State*, 116 Cal.App.4th 114, 124 (2004); *Kowalski*, 23 Cal.3d at 175-76. While state
appellate courts have indicated that the common-law "employment" test should be used to determine
who qualifies as an "employer" for purposes of a § 2802 claim, *Arnold v. Mut. of Omaha Ins. Co.*,
202 Cal. App. 4th 580, 586 (2011) ("We conclude the trial court correctly determined the common
law of employment was applicable for purposes of Labor Code section 2802"); *Estrada*, 154

Cal.App.4th at 10 (explaining that "the Labor Code does not expressly define 'employee' for purposes of section 2802" and applying common-law employment test), the law is unclear regarding which test courts should apply to determine who qualifies as an "employer" for purposes of a *Tameny* claim or under § 1102.5. *See, e.g., Ledet v. Cal. Waste Solutions, Inc.*, No. 12-CV-6255-JSC, 2013 U.S. Dist. LEXIS 37214, at *15 (N.D. Cal. Mar. 18, 2013) (observing that "[t]he chapter of the Labor Code in which Section 1102.5 is found does not include a definition of 'employer,'" but not identifying the proper "employment" test); *Huse v. Auburn Honda*, No. 04-CV-227-DFL(JFMx), 2005 U.S. Dist. LEXIS 45494, at *8 (E.D. Cal. June 6, 2005) (observing "'Employer' is not defined in Cal. Lab. Code § 1102.5" and applying "employment" test for FEHA claims).[8]

Nonetheless, the Court assumes that California courts would apply some variant of the common-law "employment" test to determine "dual" or "joint" employment for all of Rosenberg's claims. *See Arnold*, 202 Cal.App.4th at 586 ("[W]hen a statute refers to an 'employee' without defining the term, courts have generally applied the common law test of employment to that statute") (citing *Metro. Water Dist. of S. California v. Superior Court*, 32 Cal. 4th 491, 500-01 (2004)).[9] The Court further assumes that "employer" would be defined broadly given the employee-protective policies underlying Rosenberg's *Tameny* and Labor Code claims. *See S. G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal.3d 341, 353 (1989) (interpreting "employment" broadly for purposes of Labor code provisions intended to protect employees: "[T]he . . . test for determining whether a person rendering service to another is an 'employee' or an excluded 'independent contractor' must be applied with deference to the purposes of the protective legislation"); *Collier v. Superior Court*, 228 Cal.App.3d 1117, 1123 (1991) ("Labor Code section 1102.5, subdivision (b), which prohibits employer retaliation against an employee who reports a reasonably suspected violation of the law to a government or law enforcement agency, reflects the broad public policy

---

[8]Neither party has directed the Court to authority clearly identifying the applicable "employment" test for Rosenberg's *Tameny* and § 1102.5 claims. *See* Opp. at 8:25-9:7; Reply at 3:2-13.

[9]*Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996) ("When interpreting state law, federal courts are bound by decisions of the state's highest court. In the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance.") (citations omitted).

interest in encouraging workplace 'whistleblowers,' who may without fear of retaliation report concerns regarding an employer's illegal conduct"); *People v. Short*, 160 Cal.App.4th 899, 905 (2008) ("[T]he purpose of Labor Code section 2802 is to protect employees from suffering expenses in direct consequence of doing their jobs") (quotations omitted).   The Court also assumes that evidence of performing services for a putative employer would constitute prima facie evidence of employment. *See Ruiz v. Affinity Logistics Corp.*, No. 12-56589, --- F.3d --- (9th Cir. June 16, 2014) (citing and quoting *Narayan v. EGL, Inc.*, 616 F.3d 895, 900 (9th Cir. 2010) (applying California law to § 2802 claim (among others) and stating: "[U]nder California law, once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee") (citations omitted)).

Courts have phrased the common-law employment/dual employment tests in various ways, but every test looks at "the totality of the circumstances reflecting upon the nature of the work relationship of the parties, with emphasis on the extent to which the defendant controls the plaintiff's performance of employment duties." *Blazek*, 2009 U.S. Dist. LEXIS 81317, at *4-*5 & n. 1 (citing and quoting *Vernon*, 116 Cal.App.4th at 124-25); *In re Ankeny*, 184 B.R. at 72 (collecting cases); *Bradley v. California Dep't of Corr. & Rehab.*, 158 Cal.App.4th 1612, 1626 (2008) ("We glean no magic formula for determining whether the requisite employment relationship exists. The prevailing view is to consider the totality of the circumstances, reflecting upon the nature of the work relationship between the parties, and placing emphasis on the control exercised by the employer over the employee's performance of employment duties. Consequently, when a statute fails to define the term 'employee,' courts routinely look at the common-law definition for guidance, focusing on the amount of control the employer exercises over the employee."); Chin, Wiseman, et al., Cal. Prac. Guide Employment Litig. (2014) § 13:476, Ch. 13-F ("A dual, or special, employer situation exists whenever two or more employers exercise *control* over a single employee") (emphasis in original). Factors to be considered in this analysis include:

> [P]ayment of salary or other employment benefits and Social Security taxes, the ownership of the equipment necessary to performance of the job, the location where the work is performed, the obligation of the defendant to train the employee, the authority of the defendant to hire, transfer, promote, discipline or discharge the employee, the authority to establish work schedules and assignments, the defendant's discretion to determine the amount of compensation earned by the employee, the skill

required of the work performed and the extent to which it is done under the direction of a supervisor, whether the work is part of the defendant's regular business operations, the skill required in the particular occupation, the duration of the relationship of the parties, and the duration of the plaintiff's employment.

*Vernon*, 116 Cal.App.4th at 125. "Generally, the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends often on particular combinations." *S. G. Borello & Sons, Inc.*, 48 Cal.3d at 351 (citations and quotations omitted, punctuation altered).

Given the ambiguity in the law and fact-sensitive nature by which "employment" is determined, it is perhaps unsurprising that several courts have remanded actions in circumstances similar to those at issue here. For example, *Blazek*, the plaintiff sued two entities, one of which (ADESA) was non-diverse, claiming, among other things, termination in violation of public policy. 2009 U.S. Dist. LEXIS 81317, at *1. The diverse defendant, PAR, removed on a fraudulent joinder theory, claiming that ADESA was not the plaintiff's "employer." *Id.* In support of its removal notice, PAR submitted declarations stating that PAR and ADESA "operate independently of each other and do not jointly employ any employees," and that no ADESA employees "were involved in the decisions regarding Plaintiff's employment or the day-to-day conditions of her employment." *Id.* at *2, *5-*6. PAR also submitted business records demonstrating that the plaintiff was employed by PAR, not ADESA. *Id.* at * 2. For her part, the plaintiff submitted an offer letter on ADESA letterhead, and showed that at least one of her paychecks was issued by "ADESA San Diego," which, although a separate entity, had the same address as the ADESA entity named in the plaintiff's complaint. *Id.* at *6-*7. After describing "several theories under which a corporate entity separate from the corporate entity that officially employs the plaintiff" could be deemed the plaintiff's "employer," the *Blazek* court remanded the case to state court. As the court explained, the "bare statements" in PAR's declarations did not demonstrate that "there is no possibility that Plaintiff can establish that ADESA . . . is her employer," particularly since PAR and ADESA's relationship could not be determined based on the evidence in the record. *Id.* at *6-*7. Because, "[b]ased on the record before it," the court could not "foreclose the possibility that Plaintiff will be able to show that ADESA . . . should be held liable as [her] employer," it found that remand was proper. *Id.* at *7.

Similarly, in *Troisi v. Cannon Equip. Co.*, the court remanded a case removed on a fraudulent joinder theory because, although the plaintiff's complaint did "not implicate all the relevant facts to

determining an indirect employment relationship, his pleading at least raise[d] the possibility." No. 08-CV-1377-DOC(ANx), 2009 U.S. Dist. LEXIS 23100, at *16 (C.D. Cal. Jan. 30, 2009). In *Troisi*, the non-diverse defendant, Cannon, sued the plaintiff in Minnesota for breaching the parties' employment agreement. *Id.* at *4-*5.[10] The plaintiff filed a parallel employment suit in California state court against Cannon and Cannon West, a non-diverse defendant. *Id.* at *6-*7. Cannon removed the action the federal court, asserting that Cannon West was not the plaintiff's employer and therefore was a sham defendant. *Id.* at *7-*8. Specifically, Cannon argued that:

> Cannon West [was] a mere manufacturing facility that occasionally provide[d] Cannon sales associates with offices. [Cannon] point[ed] out that the plant manager at Cannon West . . . reported directly to [Cannon's President], and did not supervise [plaintiff]. Further, [Cannon] contend[ed] that [plaintiff's] Employment Agreement was only with Cannon Equipment and that [the plaintiff's] direct supervisors were all employed and located at Cannon in Rosemont, Minnesota. Thus, [Cannon] argue[d] that Cannon West, now a defunct corporation, can in no way be considered [plaintiff's] employer . . . or otherwise be liable for . . . his alleged injuries.

*Id.* (names altered for consistency). Cannon also argued that: "Cannon West in no way supervised [the plaintiff] and . . . did not train, hire, transfer, promote, or discipline him. [Canon] further point[ed] out that [the plaintiff's] wages [were] paid by Cannon." *Id.* at *14-*15 (names altered for consistency). In opposition, the plaintiff provided the following facts: (1) he worked out of the Cannon West facility throughout his career, (2) Cannon and Cannon West had the same President, (3) Cannon and Cannon West were affiliates, or at least in a parent-subsidiary relationship, and (4) Cannon West had at least some employees (thereby raising the possibility that the plaintiff could also be an employee). *Id.* at *11-*12. While recognizing that the plaintiff's facts did not implicate all of the relevant common-law "employment" factors, the court concluded that his submissions "at least raise[d] the possibility" that Cannon West was his "employer" under the common-law test, and accordingly remanded the action. *Id.* at *16.[11] In so doing, the court wrote:

---

[10] The plaintiff moved to dismiss or transfer the case to California, but the Minnesota district court denied the motion based on the forum-selection and choice-of-law clauses in the plaintiff's employment contract. *Troisi*, 2009 U.S. Dist. LEXIS 23100, at *5.

[11] In addition to finding that the plaintiff raised the possibility of employment under the common-law employment test, the *Troisi* court also found that the plaintiff raised a non-speculative possibility of joint employment under the "integrated enterprise" test. *See Troisi*, 2009 U.S. Dist. LEXIS 23100, at *16-*18. The *Blazek* court seemed to reach the same conclusion. 2009 U.S. Dist. LEXIS 81317, at *4-*7. Under the "integrated enterprise"

> While the Court is sympathetic to [Cannon's] argument that [the plaintiff] is trying to evade the Minnesota action, the Court cannot as a result exercise jurisdiction where such exercise is improper based on the applicable legal standards . . . . [T]he Court notes that the standard for proving fraudulent joinder requires [Cannon] to show that Cannon West has no real connection to the action. The Court cannot see how this is the case when Cannon West is the facility out of which [the plaintiff] worked from and his direct supervisor . . . potentially acted as the president for both Cannon and Cannon West.

*Troisi*, 2009 U.S. Dist. LEXIS 23100, at *20-*21.

As in *Blazek* and *Troisi*, the Court would remand this case because Redflex DE has failed to present summary judgment-type evidence foreclosing any possibility that Rosenberg can show Redflex CA was his employer. At the outset, the Court would note that, like in *Blazek*, Redflex DE relies primarily on the "bare statements" in DeVincenzi's declaration to support its argument that Redflex CA did not employ Rosenberg, and does not provide information regarding Redflex CA and Redflex DE's relationship from which to evaluate Redflex DE's claim of separateness. *See* Reply at 3:1-4:7. Moreover, many of the statements in DeVincenzi's declaration would be inadmissible or disregarded at the summary judgment stage because they are not based on personal knowledge, contain hearsay, and/or constitute mere legal conclusions.[12] *Morris*, 236 F.3d at 1068 (stating that

---

test, courts examine four factors to determine whether two entities can be treated as a single employer: (1) inter-related operations, (2) common management, (3) centralized control of labor operations, and (4) common ownership of financial control. *See Kang v. U. Lim America, Inc.*, 296 F.3d 810, 815 (9th Cir. 2002). Here, the parties' submissions also suggest a possibility that Rosenberg could show that Redflex CA and Redflex DE were an integrated enterprise under this test. For example, the fact that Rosenberg worked in Redflex CA's offices while employed by Redflex DE implicates factors (1), (2), and (3). Moreover, if, as Redflex DE argues, the contracts Rosenberg signed on Redflex CA's behalf "as an Executive Vice President of [Redlex DE] . . . merely bound Redflex CA to provide services on behalf of [Redflex DE]," that would seem to implicate factors (1), (2), and (4).

[12]For example, the material portions of DeVincenzi declaration state:

1. "Based on my review of corporate records, I am informed and believe that Mr. Rosenberg was solely employed by Redflex DE and was never an employee of [Redflex CA]";
2. "Based on my review of business records, I am informed and believe that Redflex CA does not, and at all relevant times to this action did not, employ Aaron Rosenberg";
3. "Based upon my knowledge that Redflex CA did not employ Aaron Rosenberg, Redflex CA did not have the authority to, and did not, exercise control over Mr. Rosenberg's hours of work, type of work, place of work or working conditions. Redflex CA did not have the power to, and did not, supervise Mr. Rosenberg";
4. "Furthermore, [based on my review of business records] Redflex CA did not have the authority to, and did not, negotiate or set Mr. Rosenberg's salary or make any decisions affecting the terms and conditions of Mr. Rosenberg's employment. Redflex CA did not have the authority to, and did not, discipline Mr. Rosenberg or make the decision to separate Mr. Rosenberg from employment";
5. I am informed and believe that Redflex CA played no part in directing, and was not otherwise involved in,

-11-

fraudulent joinder claims must be supported by "summary judgment-type evidence"); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"); *Taylor v. List*, 880 F.2d 1040, 1046 & n. 3 (9th Cir. 1989) (explaining that summary judgment declarations must "be made on personal knowledge, not information and belief."); *Tongil Co., Ltd. v. Vessel Hyundai Innovator*, 968 F.2d 999 (9th Cir. 1992) (explaining that information contained in business records is only admissible for the truth asserted if the proponent establishes "the foundational requirements of the business records exception"); *L.H. v. Schwarzenegger*, 519 F.Supp.2d 1072, 1079 (E.D. Cal. 2007) (explaining that a non-expert declaration "based on business records [the declarant] read, conversations [he had] with others who did have personal knowledge, or even double hearsay . . . does not satisfy Rule 56"); *Harris v. Vector Mktg. Corp.*, 656 F.Supp.2d 1128, 1136 (N.D. Cal. 2009) ("Under federal law, as under [California] law, the existence and degree of each ['employment'] factor . . . is a question of fact while the legal conclusion to be drawn from those facts – whether workers are employees . . . – is a question of law") (citations and quotations omitted); *Sharp v. Islands Rest.-Carlsbad*, 900 F.Supp.2d 1114, 1122 (S.D. Cal. 2012) (demonstrating that a "statement[s] [which constitute] legal conclusion[s] [are] inadmissible").[13]

But even if the Court overlooked these evidentiary defects, Redflex DE's evidence would still be insufficient. Like in *Troisi*, Rosenberg submitted evidence showing that he worked in the Redflex CA facility. Rosenberg Decl. ¶ 2; *see also Vernon*, 116 Cal.App.4th at 125 (including among relevant "employment" factors: "the ownership of the equipment necessary to performance of the job" and "the location where the work is performed"). Moreover, akin to the paycheck in *Blazek* (which was not even sent by the named defendant, ADESA), Rosenberg has come forward with multiple contracts he negotiated and signed as an officer of Redflex CA. *See* Rosenberg Decl.

---

the internal investigation."

[13]Rosenberg filed objections to DiVicenzi's declaration. Docket No. 21. Characterizing Rosenberg's objections as an improper surreply, Redflex DE move to strike the objections or for leave to file individual responses. Docket No. 22. The Court would DENY Redflex's DE's request to respond because, while many of Rosenberg's objections are well-taken, nothing ultimately turns on the admissibility of DiVicenzi's declaration.

¶ 3 & Exs. 1-8; *see also Narayan*, 616 F.3d at 900 ("[U]nder California law, once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee"). Redflex DE disputes the significance of this evidence, arguing – without citation to the record – that Rosenberg signed the contracts "as an Executive Vice President of [Redflex DE]" and that the contracts "merely bound Redflex CA to provide services on behalf of [Redflex DE]." Reply at 5:12-15. But based on the evidence Rosenberg has put forward, and resolving all disputed factual questions and state-law ambiguities in Rosenberg's favor, *Good*, 5 F.Supp.2d at 807; *Macey*, 220 F.Supp.2d at 1117, the Court cannot conclude that Redflex DE has presented summary judgment-type evidence foreclosing *any possibility* that Rosenberg can show Redflex CA was his employer. Thus, "[w]hile the Court is sympathetic to [Redflex DE's] argument that [Rosenberg] is trying to evade the [Arizona] action, the Court cannot as a result exercise jurisdiction where such exercise is improper based on the applicable legal standards." *Troisi*, 2009 U.S. Dist. LEXIS 23100, at *20.[14]

## IV. Conclusion

Thus, for the reasons just discussed, the Court would REMAND this case to state court but not award attorney's fees..[15]

---

[14]With that said, the Court does not find Redflex DE's basis for removal objectively unreasonable. Therefore, a fee award is unwarranted. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) ("Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal"); *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008) ("[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted").

[15]If the arguments in Redflex DE's Motion to Dismiss, Stay, or Transfer have purchase, it can receive in state court essentially the same relief it would have obtained from this Court. *See* Rylaarsdam, Edmon, et al., Cal. Prac. Guide Civ. Pro. Before Trial (2014) §§ 3:170-72, Ch. 3-B (collecting cases and explaining that California courts generally enforce forum-selection and choice-of-law clauses); *Societe Jean Nicolas Et Fils v. Mousseux*, 123 Ariz. 59, 61 (1979) (holding that forum-selection clauses are generally enforceable under Arizona law).